## ALEXANDER SPECK, Respondent, *v.* HENRY P. HOYT, Appellant.

Refusing or granting a new trial will not be disturbed, except where there is a gross abuse of discretion. Nor where the decision of the court is upon bare questions of fact.

But where the question of law was adverse to the verdict, and the court might well have granted a nonsuit, or instructed the jury to find for the other party, a new trial should have been granted; and the refusal to do so was such an improper use of its discretion as calls for the exercise of the revisory power of this court.

APPEAL from the Superior Court of the City of San Francisco.

The complaint alleges that the plaintiff, on the 12th September, 1852, was owner of one-half of the Schooner Goliah, of the value of $6000, which was moored at the port of San Francisco; that on the 15th December, 1852, defendant took the said schooner and converted her to his own use, and being unlawfully possessed of her as aforesaid, sent her to Angel Island, where she was damaged and spoiled, and plaintiff lost his half of her, to his damage $3000, the half value of said schooner; and prays judgment, &c.

Defendant answered and admitted that on the 15th December, 1852, the plaintiff was owner or claimant of said schooner, of the value of $4000, and not $6000 as alleged, and denies that he or his agents removed the schooner, or took her out of plaintiff's possession, on the 15th December, or at any time, or converted her, &c., or that he sent her to Angel Island, whereby she was broken, &c., and denies interfering with said vessel in any way whatever, or with having her in his possession or control since the 12th December to this date, and denies all allegations of trespass, &c.

The evidence showed that the vessel was formerly the property of the defendant, and that on the 28th October, 1852, he sold and transferred her to the plaintiff and one Moffit for $4000 ; received $1000 in cash, and took the obligation of Moffit and plaintiff, for $3000, the balance of the purchase-money, payable twelve months after date, with interest at the rate of four per cent. per month, payable monthly, dated October 28th, 1852, and this was secured by a mortgage of the vessel.

F. Southorne, called for plaintiff, proved that he bargained with defendant for the charter of the vessel, which was reduced to writing, as follows :—

"Received, San Francisco, December 15th, 1852, from F. Southorne, $120 ; on account of which I hereby consent that the schooner Goliah may make one trip to Angel Island, and back, not assuming any risk of loss of vessel or any damage that may happen, which sum is to be in full for the use of the boat for the voyage, or money returned.

"HENRY P. HOYT."

The witness proceeded to say, "I got the vessel of Hoyt, and got the writing of him. I took possession of the vessel pursuant to this agreement, and appointed a captain, and sent her to Angel Island. She dragged ashore in a gale of wind, on the Contra Costa side of the bay. Hoyt then bought her at the marshal's sale, and brought her away."

On cross-examination the witness said, he never obtained the consent of plaintiff or Moffit for the taking of the vessel; that he had asked plaintiff for his consent, which he refused to give; that he had shown the agreement with Hoyt to both Speck and Moffit,

before he took the vessel, and asked Moffit's consent to take her, which he refused, That Moffit gave him some kind of writing. "I don't know now what it was. I never saw the paper since, that I know of. It is lost. I don't recollect its contents. Can't say whether it contained his consent to take the vessel or not. I asked Moffit for the paper, to clear me of responsibility if I took the vessel. It contained words to free me from responsibility. I cannot say if it was a consent or not. It was after I received the paper from Hoyt." In answer to the question, "Did Speck say you should not take the vessel?" witness answered, "I know he did not like it, but cannot say he said I should not take her."

I had men on board and she sailed the evening I got the paper from Hoyt to Angel Island. The old captain under Speck and Moffit, was on board when I got the agreement from Hoyt. I paid Hoyt when I got the paper, the $120 mentioned therein. In my conversation with Hoyt, he said the vessel had done damage in coming up the harbor, and he would stop the freight-money; he did not say he had commenced a suit to stop the freight.

I. Hoffman, a hand on board the vessel on her last trip, testified that Hoyt was at the vessel in the morning of the day she sailed, and said she had been doing damage in the harbor, and should not go out until he gave orders, and had seen further into it; he said the vessel belonged to him: this Hoyt repeated the same day. After Southorne's man came on board, Speck removed his things from the vessel.

T. Moffit sworn, for plaintiff.—Proved the purchase of the vessel from Hoyt by him and Speck, as stated above. The vessel did some damage in the harbor, and Hoyt stopped the freight. I did not consent to Southorne taking the vessel at any time. He wanted to buy her. I told him to go to Hoyt; that he had taken the responsibility. On cross-examination witness said he had no interest in the suit. I have since sold out my interest in the vessel. If Speck succeeds in this suit, I intend to bring a suit for my share. (Here the defendant moved that all the testimony of the witness be ruled out, which motion the court overruled.) Southorne showed me the paper he received from Hoyt, and asked me to sign it. I refused. This was the day.

he took the vessel.   He asked my permission to take the vessel. I refused, but I gave him a letter, which was about this : "If Mr. Hoyt has taken the responsibility to let this vessel go, I'll have nothing to do with it, but hold Hoyt responsible."   This paper I gave to Southorne after he showed me the receipt from Hoyt.   Southorne then said he was going to Angel Island after a load of stones.   I did not forbid him to take the vessel.   On the 1st December I paid $120 for one month's interest due on the note to Hoyt.   I referred Southorne to Hoyt, when he wanted to buy the vessel, as he had taken the responsibility of stopping the freight.

The defendant moved the court for a new trial, which the court refused.

The court instructed the jury,

1st. That they were the judges of the weight and credibility of the testimony.

2d. That Hoyt's written permission, of itself, does not constitute a taking "out of the possession of the plaintiff;" nor does it constitute a conversion of the vessel to the defendant's own use as alleged.

3d. That the mere stoppage of the freight-money would not of itself amount to a wrongful conversion of the vessel.

4th. That Hoyt's written permission is not a charter-party.

The defendant asked the court to charge as follows:—

That the plaintiff, being the joint owner of an undivided interest, and tenant in common with Moffit in said schooner, cannot sue without joining his co-tenant.

Which the court refused to give.

Defendant also asked the court to charge,—

That if the jury find from the evidence that Moffit, who was used as a witness by plaintiff, was united in interest with the plaintiff in the ownership of the schooner now, or at the commencement of this suit, they should find for defendant.   Refused.

That plaintiff, to recover in this suit, must show that the defendant took the vessel into his possession without the express or implied consent of the plaintiff, or Moffit, the joint owner with plaintiff.   Given.

That if the jury find from the evidence that the said schooner

was taken on the voyage by Southorne by common consent of the parties, *i. e.* Speck, Moffit, and Hoyt, the jury should find for the defendant, even though Speck may have expressed his approbation merely in reference to the arrangement made for the voyage.

That the court gave.

The jury brought in a verdict for plaintiff for $2000.

The defendant, on the preceding case, moved the court to vacate the verdict rendered by the jury, and to grant a new trial.

Because the verdict was against and contrary to the evidence, and against law, and the instructions of the court.  And for error in law, in allowing defendant's receipt to be read in evidence, to prove a taking and conversion of the vessel.

June 13. The defendant moved for a rule to show cause why additional reasons for a new trial, should not be filed.  The plaintiff moved to vacate the rule, and read his affidavit, which set forth, that this cause had been twice tried, in March, and in April, 1853; that on both trials, Southorne, referred to in defendant's affidavit, had been sworn and examined as a witness, and his testimony was substantially the same in both.  That Southorne is a seafaring man, and had left this port openly as mate of a vessel bound for Sydney, about the first of the present month, and avers that Hoyt well knew that he had left as aforesaid; and yet entered a charge of perjury against him, and advertised $100 reward to any one who would produce his person, &c., and avers that this was for effect, &c.

The affidavit of defendant in behalf of the motion, stated that it was false that Southorne had paid him $120 for a charter-party of the schooner; that since the trial he, Southorne, had exhibited to the affiant, the written permission of Moffit to the charter of the schooner; denied by him when sworn as a witness on the trial; and had also exhibited it to one W. H. G. Lester, whose affidavit he presents, and that he can prove the falsehood of the statement of Southorne, as to the payment of the $120 for the charter, &c., by one James Costello, and offers his affidavit, &c., and that he had not been able to establish the proof as to the false swearing, until since the motion was made for a new trial.  And that he has caused a warrant of arrest to issue,

27

against Southorne, for perjury. The affidavit of Lester stated, that since the trial, Southorne had exhibited to him a written permission of Moffit to take the schooner to Angel Island; that Southorne wanted a favor of him, and by exhibiting the paper, placed himself in the power of the affiant.

The affidavit of Costello corroborated the above.

The court refused the new trial, and defendant appealed.

*Crocket* and *Baker,* for appellant.

The sale of the vessel was only conditional, Hoyt being the owner in fact. Plaintiff admitted Hoyt's claim for $2000. Hoyt said in plaintiff's presence, she could not go till his claim was satisfied. Speck knew that Southorne would take the vessel, and did not forbid it.

Moffit should have been excluded as a witness. The suit was prosecuted for his immediate benefit, he being a partner of plaintiff. The trespass was not committed on the half of the vessel, and the joint note of Moffit and plaintiff was given in payment. Plaintiff is responsible to his partner for half the amount recovered. If the note is collected by Hoyt, Moffit can get half the judgment against Hoyt, recovered by Speck. If Hoyt should die insolvent, Moffit would be entitled to half this money secured by his own testimony.

There was no conversion by defendant, because of the property in him. He only gave his consent to the voyage, writing the permission of plaintiff, whose consent was to be implied by his conduct, and Moffit's discharge of Southorne from responsibility.

One joint tenant cannot support this action; the possession of one is the possession of both.

If the owner of goods stands by, and permits another to treat them as his own, he cannot recover the goods. Hoyt was allowed to treat the vessel as his own ; neither Speck nor Moffit forbade his interference.

Joint owners of a ship, for obvious reasons, are allowed greater latitude than tenants in common of other property.

There is no evidence that Southorne acted as Hoyt's agent, as charged. He acted for himself.

*Sharp,* for respondent.

Non-joinder by tenants in common can only be pleaded in abatement.  1 Chit. Pl. 66, and notes; 6 T. R. 766; 7 Ib. 279; 2 Com. Law Rep. 54.

If the objection is not taken by demurrer, it is waived.  See 17th sect. Pr. Act, and sect. 45.

This court will not disturb the finding of a jury on evidence, when the judge who tried the cause is satisfied with the finding.

The only issues below are *conversion* and *value;* plaintiff's ownership is expressly admitted by defendant's answer.  There was no evidence to show any right in defendant to dispose of the property.

Moffit was a good witness even at common law.  But our Statute, sect. 393, Pr. Act, makes interest in the event go to the credibility.

The additional affidavits were not filed in time.  The witness Southorne, as to the matter of the paper, was defendant's witness, and of course could not be impeached by him.  2 Den. 109; 4 Johns. R. 425; 5 Johns. R. 248; 14 Johns. R. 186; 10 Wend. 285; 1 Con. 359.

The appeal is for delay.

HEYDENFELDT, Justice, delivered the opinion of the court.

There is in this case, no conflict of evidence whatever.  It matters not that the defendant, for his own security, had verbally stopped the freight-money.  This seems to have given much offence to the plaintiff, and his part owner; and they therefore appeared to decline the proper care and responsibility which belonged to them as owners.

The act of Hoyt, in receiving the hire from Southorne, and giving his consent for the vessel to make a trip to Angel Island, was no trespass; taken in connection with the fact, that he had stopped the freight-money previously, it amounted to a waiver of his design for this one occasion; and, therefore, it was no authority to Southorne to take the vessel without the consent, or otherwise, than acting under the direction of the plaintiff and Moffit.  So it was evidently understood by Southorne, because we find him applying to them for their consent, notwithstanding

he had obtained the plaintiff's. It was an easy matter for them to have prevented any interference with their property, by simply objecting; but they made no effort to do so, for although they did not affirmatively consent, they did not prohibit Southorne; but on the contrary, acting under a mistake as to their legal right and remedy, they implied a consent by saying that they held Hoyt responsible.

The court below charged the jury, properly, as to all the points which are here considered. The only error, therefore, to be passed upon, is the refusal to grant a new trial, and relieve the defendant from the strange and unaccountable verdict of the jury.

We have invariably held, that refusing or granting a new trial would not be disturbed, except when there was a gross abuse of discretion; nor when the decision of the court is upon mere questions of fact.

In this case, however, as a question of law, it is beyond dispute, that the defendant is not liable. The court might well have granted a nonsuit, or instructed the jury to bring in a verdict for the defendant. It is the least then it could have done, to grant a new trial; and the refusal to do so, is such an improper use of its discretion, as calls for the exercise of the revisory power of this court.

The judgment is reversed, and the case remanded.

[NOTE.—A petition was filed, for a rehearing in the above case by respondent, on the 13th December, on which is endorsed per MURRAY, Chief Justice :—

"Let a stay of proceedings be entered, until the further order of this court."]