Hon. WM. J. GALBRAITH, } Associate Justices.
Hon. JOHN COBURN,

---

## KENNON, respondent, v. GILMER ET AL., appellants.

CHANGE OF VENUE — *Discretionary* — *In what manner and for what causes exercised.*— The power of courts to grant changes of venue is limited to the exercise of a judicial discretion, on good cause shown, which must consist of facts beyond the mere opinion and conclusions of the party making the affidavit.

EVIDENCE — *Instances of viciousness subsequent to accident may be given in evidence.*— In an action for damages received in an accident caused by the use of unsafe and unsuitable horses, among other things evidence of vicious acts, both before and after the accident, are admissible to show the vicious disposition of the animals.

INSTRUCTIONS — *From the court* — *To be consistent.*— Instructions to a jury are always and only given by the court, and should be consistent, though not giving the whole of the law in every part. They must never be considered separately, but each as limiting and interpreting other portions, and if the law is correctly stated, when the instructions are thus considered, the verdict and judgment will not be disturbed.

VOL. V — 17

| | |
|---|---|
| 5 | 257 |
| 7 | 37 |
| 7 | 502 |
| 8 | 102 |
| 8 | 103 |
| 9 | 109 |
| 11 | 23 |

| | |
|---|---|
| 5 | 257 |
| 13 | 167 |
| 5* | 847 |
| 32* | 856 |

| | |
|---|---|
| 5 | 257 |
| 15 | 288 |
| 5* | 847 |
| 39* | 290 |

| | |
|---|---|
| 5 | 257 |
| 16 | 179 |
| 16 | 431 |
| 17 | 351 |

| | |
|---|---|
| 5 | 257 |
| 22 | 52 |
| 22 | 56 |

| | |
|---|---|
| 5 | 257 |
| 25 | 245 |

DAMAGES — *Degree of responsibility — Excessive.*—When the injury is the result of unavoidable accident, not of wilful negligence or gross carelessness, damages will be regarded excessive where awarded to the full extent allowed by law where death ensues, where the evidence shows that the loss of a foot, as in this case, would not necessarily shorten life nor wholly incapacitate one for business.

*Appeal from Second District, Deer Lodge County.*

W. W. DIXON and STEPHEN DE WOLF, for appellants.

1. The damages are excessive. In a case where no gross carelessness or recklessness is shown, damages should be limited to compensation for injuries sustained, and should not be punitive or exemplary. The verdict in this case allows greater damages than are ever allowed where the highest degree of negligence was proved. Courts will set aside verdicts for excessive damages. 47 Barb. 196; 36 Cal. 481; Hilliard on New Trials (2d ed.), p. 576, sec. 34, note and cases. Damages were greater than would have been allowed had death ensued. Codified Statutes, p. 508, secs. 491–92.

2. The verdict was against evidence. A great preponderance of evidence shows that the driver was sober, careful, experienced; that the team was gentle, well broken, and had been long in use; that the accident resulted from causes that could neither have been foreseen nor prevented, and by the contributory negligence of the plaintiff.

3. The court erred in overruling the motion for a change of venue. The material statements of appellants were not contradicted. The true rule is given in *Osborn v. Bank,* 9 Wheat. 866.

4. The court erred in admitting evidence of matters that occurred at different times from that when the accident occurred. Wharton on Ev. vol. 1, sec. 40.

5. Evidence of disaster at another time or place is incompetent to show negligence, unless all the material conditions are the same.

6. The instructions were contradictory. They erred in stating the duty and liability of carriers of passengers. 3 Mont. 90. The law requires that the plaintiff must prove defendant's negligence. When the immediate cause of the injury was plaintiff's own act, the burden of proving negligence of defendants rests on plaintiff throughout.

J. C. ROBINSON and THOS. L. NAPTON, for respondent.

1. Refusal to grant change of venue is not ground for reversal of judgment, unless gross abuse of discretion is shown.

2. The evidence objected to was both competent and relevant.

3. The instructions, taken together, are consistent and correctly state the law. Respondent's objections to the instructions are not specific. It was not contributory negligence in the respondent to jump from the coach.

4. The evidence fully supports the verdict, but, so long as there is any evidence to support a verdict, the court will not disturb it. Hilliard on New Trials, 484–85.

5. The jury are to decide whether the negligence was slight or gross. The injury was permanent, and the jury were free to estimate the damages according to their own judgment. *Boyce* v. *Cal. Stage Co.* 25 Cal. 460.

WADE, C. J. This is an action by a passenger against a common carrier of passengers to recover damages for injuries alleged to have been received in consequence of the negligence and carelessness of the common carrier.

The complaint, in substance, alleges that on the 30th day of June, 1879, the defendants were common carriers of passengers for hire by stage coaches between the towns of Deer Lodge and Helena, in this territory; that upon said day the defendants, as such common carriers, and in the usual course of their business, and for the usual fare, prepaid by plaintiff, received the plaintiff as

a passenger on one of their coaches, for transportation from Deer Lodge to Helena aforesaid, and undertook to carry him safely on said passage; that in managing and conducting said coach from its starting point to its place of destination, the defendants were guilty of negligence and carelessness in this, that they failed to provide a suitable, safe and competent driver, and suitable, safe, gentle and well broken horses for said coach, which was without the fault of plaintiff, who did not contribute in any way to said carelessness and negligence; that on said day, while the plaintiff was a passenger, as aforesaid, being transported as aforesaid, and in consequence of said negligence and carelessness, and by reason of the horses aforesaid being unsafe, unsuitable and unmanageable, and one of them jumping and throwing itself on to the pole of the coach, and thereby breaking the same, and said team of horses taking fright, the coach was, in consequence thereof, thrown and placed in such a condition of peril as to endanger the life of the plaintiff, and to make it apparently unsafe for him longer to remain on the coach, and he, being actuated by great fear of bodily injury by longer remaining on the coach, jumped therefrom to the ground, by reason of the dangerous position in which the coach was placed by the defendants, in consequence of their negligence and carelessness aforesaid; that the plaintiff in so jumping from the coach acted as a reasonable and prudent man would have acted under like circumstances, and that he did not contribute to the injury he received and was without fault on his part; that in so jumping from the coach to the ground one of the plaintiff's legs was broken, and that in consequence thereof, it became necessary to, and his leg was amputated, causing a sickness of three months, and an expense of $750; wherefore, the plaintiff prays judgment for the sum of $25,000 besides the expenses aforesaid, and costs of suit. The defendants moved for a change of venue, which motion was overruled and a trial ensued,

which resulted in a verdict for plaintiff for the sum of $20,750. Judgment was entered on the verdict, from which, and an order overruling a motion for a new trial, the defendants appeal to this court. The appellants in their briefs and arguments rely for a reversal of the judgment upon the following alleged errors:

1. The refusal of the court to grant their motion for a change of venue.

2. The admission of incompetent and irrelevant testimony.

3. That the instructions to the jury were contrary to law.

4. That the testimony is insufficient to support any verdict for damages against defendants.

5. That the damages are excessive.

1. Our statute provides that the court may, on good cause shown, change the place of trial, when there is reason to believe that an impartial trial cannot be had in the county designated in the complaint. R. S. p. 50, sec. 62.

The affidavit upon which the motion for a change of venue was based, made by an agent of the defendants, substantially sets forth that affiant is acquainted with and knows the general sentiments and opinions of the public in reference to this action, and the parties thereto; and from his knowledge of such public opinion, he has reason to believe and does believe that the defendants cannot have a fair and impartial trial of this action in the county of Deer Lodge; that the general sentiment of the public in said county is prejudicial to the defendants, so far as this action is concerned; that one trial of the case has already taken place in that county in which heavy damages were awarded to the plaintiff by the jury that tried the cause; that the verdict and judgment rendered thereon have been generally canvassed in a manner favorable to the plaintiff and unfavorable to defendants,

and thereby has produced a general prejudice against defendants.

Venue may be changed only for good cause shown. The matter does not rest in the mere discretion of the court. The court has no authority to exercise any other than a judicial discretion. The affidavit must show the cause by a statement of facts. The court must arrive at a conclusion from the facts stated and not from the conclusions of the witness. An affidavit against a whole community, that states the mere conclusions of the witness, is of no consequence whatever. It ought to state the facts so that the court, and not the witness, may determine whether the community is prejudiced. The court is to make a finding from the facts. It is to determine in a judicial manner whether an impartial trial may be had. An affidavit which states that the affiant "is acquainted with and knows the general sentiments and opinions of the public in reference to said action and the parties thereto, and from his knowledge of such public opinion affiant has reason to believe and does believe that the defendants cannot have a fair and impartial trial of said cause," in the county named, is the mere conclusion of the witness and does not state any facts upon which the court can ascertain the sentiment of the community.

In the case of *People* v. *Yoakum,* 53 Cal. 567, the court says: "The conclusions reached on the application must be such as find warrant in the facts disclosed by the affidavits filed, and in the circumstances made to appear in the record."

In the case of *People* v. *Congleton,* 44 Cal. 95, the court says: "In this case the affidavits upon which the motion was based were exceedingly unsatisfactory; they, in the main, set forth merely that in the opinion and belief of the affiants the prisoner could not have a fair trial, owing to the popular prejudice against him."

*People* v. *Shuler*, 28 Cal. 495, is to the same effect, and the court says: "The defendant's affidavit does not establish the fact that the people of the county of Butte were so prejudiced against him as to become disqualified to sit as jurors in this case. The statement in this respect was upon information and belief, which, standing alone, no court, in the exercise of a proper discretion, could regard as of sufficient probative force to authorize a change of the place of trial."

In *People* v. *Mahoney*, 18 Cal. 185, the court says: "The mere affidavit of the defendant does not render it obligatory on the court to change the venue. . . . A reasonable discretion is to be given to the court on the subject; and while we should not be disposed to hold an arbitrary refusal to change the venue as warranted, yet we think the mere unsupported assertion of the defendant, that he was the victim of a general prejudice in the county, is not a conclusive reason for the changing the venue, when it is so easy to obtain corroboration of the statement if it were really true."

The correct rule of practice in an application of this character is well stated in *People* v. *McCauley*, 1 Cal. 383, as follows: "Affidavits for such a motion must state the facts and circumstances from which the conclusion is deduced that a fair and impartial trial cannot be had. The conclusions are to be drawn by the court, and not by the defendant and his witnesses; and the court must be satisfied from the facts and circumstances positively sworn to in the affidavits, and not from the general conclusions to which the defendant may swear, or which his witnesses may depose they verily believe to be true."

The fact that one trial had already taken place in the county, and that the verdict had been generally canvassed by the public in a manner favorable to the plaintiff and unfavorable to the defendants, whereby, as the witness says, there is a general prejudice against the defendants,

is a conclusion of the witness that is not warranted by the facts.

In *Sloan* v. *Smith*, 3 Cal. 413, Mr. Chief Justice Murray says: "The affidavit states that, owing to certain litigations in which the defendant had been engaged, a prejudice existed against him in the city of San Francisco, which would prevent him having a fair and impartial trial. . . . The affidavit was, on its face, insufficient to warrant the court in changing the venue."

The fact that a jury might be found in a county, that answers all the statutory requirements, is not at all conclusive upon the question of the existence of such prejudice in the community as to render a fair and impartial trial impossible. This is not the test to be applied to the question, for such a jury might be found when the public sentiment was in a blaze of excitement and passion against one of the parties to the action, and the pressure of this public sentiment might make itself felt during the trial, in very many ways, upon the jury, upon the witnesses and officers of court, and upon the court itself. Jurors, witnesses and officers cannot be insensible to a strong and excited public feeling and sentiment concerning the trial that is going on, and are liable to be influenced by it, unconsciously, and with an honest intention of doing their whole duty. The court room is a public place, and a trial, in which a community is deeply interested, brings the people there, and the pressure of their presence and feeling is a strong argument, and almost irresistible, one way or the other. The influence of their presence, and the expression of their interest in the event of the trial, in divers ways, might give a false coloring to the testimony, or warp and bias the judgment in weighing and considering it. And so it is not all of an impartial trial to secure a fair and impartial jury. But the conditions and circumstances surrounding a case that render an impartial trial impossible must come to the knowledge of the courts as facts, and not as opinions

and conclusions of the witnesses. The "good cause shown," required by the statute, must be a statement of facts upon which the court is to determine whether a sufficient case is made.

2. It is charged in the complaint that the horses attached to this coach were unsafe and unsuitable, and that they became unmanageable, one of them jumping and throwing itself on the pole of the coach, thereby breaking the same, and said team of horses taking fright, etc.

Upon the issue presented by these allegations, the plaintiff, subject to objection and exception, introduced the testimony of M. C. Goodale, which was to the effect that she knew three of the four horses attached to the coach at the time of the accident; that one of them, on the lead, called Buckskin, "would run at the drop of the hat; was bad about shying, and quick to start;" and that one of the other horses, called Bitter Root, was gentle in the team to handle, "but very ferocious when you got him started, and was bad about kicking; that in starting, the Buckskin horse was very wild and tricky, like a young colt; that he was changed around frequently, and worked in different places; and that some of the drivers would not drive him at all."

Catherine Goodale testified that she knew the Buckskin horse used by the defendants on the Deer Lodge road, about July 1, 1879; that she saw him shy during fair week of that year; that one afternoon the stage stopped at her house, and the horse acted so that the driver could scarcely stop the coach; that he always shied when passing freight wagons near her house; that he would shy so badly that the driver would have to rein the team up to the fence and hold them there; that one day the stage met some pack animals by her house, and that this horse acted so badly that the team nearly got away from the driver; that she had seen this horse act in this way very frequently; that she had lived on the road for a long time and had very often seen the horse act as she had

said.    On cross-examination the witness stated that it
would be impossible for her to count up the times this
horse had shied in passing her house, as "he is always
at it if he meets a team; that upon one occasion as she
was crossing the road the horse became so frightened
that the driver could scarcely hold him; and that this
horse was in the team attached to the coach the day of
the accident."

George H. Piatt testified "that he knew this horse
called Buckskin; that in March, 1881, he rode after him
and another horse attached to a buggy; that after driving
about a mile east of Deer Lodge, and in turning around
in a lane towards the Buckskin horse, the pole crowded
him and he kicked; when he came down he was straddle
of the pole and sat down on it and broke it, and then
tried to run, and went probably seventy-five feet before
he could be stopped; that the driver struck the horse
with the whip when they were turning around in the
lane just before he kicked."

The appellants ably contend that all of this evidence is
irrelevant and incompetent, and they cite authorities to
the effect that evidence of other specific acts or instances
of negligence on the part of the defendants, whose mis-
conduct is alleged, independent of the negligence in
question, is not competent, because raising a collateral
issue.    See Shearman & Redfield on Neg. sec. 191, note;
Abbott's Trial Ev. 584–85; *First Nat. Bank* v. *Ocean Nat.
Bank,* 60 N. Y. 278; *Warner* v. *N. Y. Cent. R. R. Co.*
44 N. Y. 465; *Robinson* v. *Fitchburgh R. R. Co.* 7 Gray,
92; *Maguire* v. *Middlesex R. R. Co.* 115 Mass. 239; *Miss.
C. R. R. Co.* v. *Miller,* 40 Miss. 45; *Sherman* v. *Kort-
right,* 52 Barb. 267; *Jacques* v. *Bridgeport R. R. Co.* 41
Conn. 61; *Mobile R. R. Co.* v. *Ashcroft,* 49 Ala. (N. S.)
305; *Fillo* v. *Jones,* 2 Abb. Ct. App. Dec. 121; *Haynes* v.
*Burlington,* 38 Vt. 350; *Kent* v. *Lincoln,* 32 Vt. 591; 1
Whart. Ev. sec. 40; *Bailey* v. *Town of Trumbull,* 31
Conn. 581; *Max Ependorff* v. *Brooklyn City, etc. R. R.*

*Co.* 69 N. Y. 195; *Blair* v. *Pelham,* 118 Mass. 420; *Aldrich* v. *Pelham,* 1 Gray, 510; *Payne* v. *Lowell,* 10 Allen, 147; *Bush* v. *Susq. R. R. Co.* v. *Woodruff,* 4 Md. 242; *Bedford* v. *Hann. & St. Jo. R. R. Co.* 46 Mo. 456; *Clemens* v. *Hann. & St. Jo. R. R. Co.* 53 Mo. 366; *Coale* v. *Hann. & St. Jo. R. R. Co.* 60 Mo. 232. And especially do they insist that the evidence of the witness Piatt, as to the conduct of this horse about twenty months after the accident complained of, is irrelevant and incompetent. It is very clear, upon principle and authority, that when a party is sued for damages flowing from negligence imputed to him, it is irrelevant to prove against him other disconnected though similar negligent acts. 1 Whart. Ev. sec. 40. To admit such proof would be like attempting to establish the guilt of a defendant on one charge of crime, by proving that he was guilty of another and similar crime.

But that is not the question. Was the horse in question safe, steady and suitable for the purpose for which he was used? or was he habitually unsafe and unfit for such use? It has been said that there is no better evidence of negligence than the frequency of accidents, and it might safely be said that there is no better evidence of the unsafe character and habit of a horse than frequent and similar acts of viciousness. The vicious habits of a horse can only be proved by instances. If an accident was caused by the shying of a horse, the fact that he was a shying horse and that he had this habit might be proved by instances, before and after the accident in question. If the accident was caused by the horse kicking and breaking the pole, proof of like instances before and after the accident would tend, in some degree, to establish the character of the animal in this regard.

In the case of *Todd* v. *Inhabitants of Rowley,* 8 Allen, 51, it appeared that the injury was received on the 11th day of June, 1861. One ground of defense was that the plaintiff was driving an unsafe horse, whose vicious habit

of shying contributed to the injury; and the defendants, after introducing evidence tending to prove two instances of the horse's shying before the time of the accident, were permitted to show many similar instances afterwards, up to March, 1863, about twenty-one months after the accident complained of. As to the competency of this proof, the court, by Bigelow, C. J., says: "The objection to the evidence relating to the habits of the horse subsequent to the time of the accident goes to its weight rather than to its competency. The habit of the animal is in its nature a continuous fact to be shown by proof of successive acts of a similar kind. Evidence having been first offered to show that the horse had been restive and unmanageable previous to the occasion in question, testimony that he subsequently manifested a similar disposition was competent to prove that his previous conduct was not accidental or unusual, but frequent, and the result of a fixed habit at the time of the accident. Under the limitations prescribed at the trial, we think the evidence admissible." *Chamberlain* v. *Enfield*, 43 N. H. 356.

In the case of *Maggi* v. *Cutts*, 23 Mass. 535, it appears in evidence that, on the evening of November 19, 1875; at about half-past six o'clock, the plaintiff was riding in a wagon through Sewell street, which was about twenty-one feet wide, and there fell, or was thrown, from his wagon, and received the injuries for which he seeks to recover damages. That, for a few days previous to the accident, and upon said 19th day of November, the defendant, whose blacksmith shop was on Sewell street, had been making an excavation for a cellar under his building, and had thrown the dirt, gravel and loam therefrom into the street, and, at the time above named, there was a pile of such gravel standing in the street, about two and a half feet high, extending ten feet along the street, and from a third to half the distance across the street, the exact dimensions of the pile being in dispute.

The plaintiff introduced evidence to show that, not observing the obstacle and using due care, he had driven his horse upon the pile aforesaid so far that the forward wheels touched or went into it; that the horse had fallen upon the pile, and the plaintiff was thrown violently upon the ground; that the horse was helped upon his feet, and stood quietly until the plaintiff was put in the wagon. The plaintiff and his witnesses testified to the good character of the horse, but, on cross-examination, testified that the horse had shown signs of kicking, and that, on one occasion subsequent to the accident, the horse, which was then harnessed to a sleigh, whisked his tail, had gone round, had stopped more than once, and that he found the horse had got his leg over the shaft. The defendant, as one mode of accounting for the accident, contended that the horse might have stumbled or fallen, or stopped suddenly without reference to the pile of dirt. Here is a case where the horse, at the time of the accident, was hitched to a wagon, but there was no evidence of any misconduct of the horse at the accident. There was evidence that the horse had shown signs of kicking, and had kicked once, about two years before the accident, and that, subsequent to the accident, when hitched to a sleigh, had shown signs of kicking, and was found with his leg over the shaft. Lord, J., in deciding the case, said: "The fact that a horse driven by the plaintiff misbehaved at the time an injury was received, though such misbehavior contributed to the injury, does not necessarily preclude the party from recovering. The misbehavior may have been accidental, or from causes for which the plaintiff was under no responsibility. The misbehavior, to bar the plaintiff from recovering, must be either through the fault of the plaintiff or by reason of a vice of the horse for which the plaintiff is in law responsible. Whether or not it is a vice depends largely upon the question whether the misbehavior was only in a single instance or occasional, depending upon other

causes, or whether it was the habit of the horse. And, in order to establish the fact that the misbehavior was occasioned by the viciousness of the horse, it has been held to be competent to show that such misbehavior is habitual, and instances of misbehavior, as well after the injury as before, have been held competent to prove the habit."

Under these authorities and the principles they enunciate, the testimony of the witness Piatt seems to have been competent, though it may have been of little weight; and as to the competency of the two Goodales, there can be no doubt. The vicious habit of a horse is a continuous thing, and must be established by proving continued instances of a like kind and similar character.

3. Among other instructions to the jury the court gave the following: "The defendants, as such common carriers of passengers for hire, are not insurers of the life or personal safety of their passengers; but are bound to exercise the highest or greatest degree of precaution and care in every respect, in providing for the safety and safe transportation of their passengers while on their coaches."

Objection is made to this instruction for the reason that the words "the highest and greatest degree of precaution and care in every respect," were not so qualified and modified as to have informed the jury that the defendants were bound to exercise the highest and greatest degree of care and skill which prudent men are accustomed to use under similar circumstances. The instructions to a jury must be taken as a whole, and must not contradict or be inconsistent with each other. There is no such thing as plaintiff's or defendant's instructions. The instructions proceed from the court, and ought to cover the whole case as made in the testimony. It is not expected that all of the law can be given in one instruction, and so the instructions must be considered as a whole; and if, when so considered, they cover the entire case, and

no more, and make a harmonious whole not inapplicable or inconsistent with each other, that is sufficient.

Further along in the instructions the court defines to the jury what is meant by the expression "the highest and greatest care," or utmost care and prudence, and says: "The law imposes on the càrriers of passengers for hire, the utmost prudence and care for the safety of passengers. By this expression is meant that they must exercise the prudence, skill and care of a prudent person engaged in the same pursuit. It does not mean that they must, at their peril, adopt every precaution which might by possibility prevent accident or injury, for that would be impracticable, and would impose obligations about things that could not be foreseen, and could not, therefore, be guarded against."

Having explicitly defined to the jury the meaning of these words, it was not necessary, when they were used in other instructions, to go over the definition again.

In the case of *Ryan* v. *Gilmer*, 2 Mont. 522, we said: "They (common carriers) were required to carry appellants from Watson to Helena as safely as human foresight and reasonable care would permit. Carriers of passengers for hire are bound to use the utmost care and diligence in providing safe, sufficient and suitable coaches, harness, horses and coachman, in order to prevent those injuries which human care and foresight can guard against. *Ingalls* v. *Bills*, 9 Met. 1. The proprietor of a stage coach covenants that he will insure the safe carriage of passengers, by the exercise of extraordinary diligence and care, and is responsible for any neglect. *Fairchild* v. *California S. C.* 13 Cal. 605. Out of special regard for human life, and acting upon the presumption that every man who commits his person to the charge of others expects from them a higher degree of care for his bodily safety than they would bestow upon the preservation of his property, the law very wisely exacts from the carrier of passengers for hire the utmost care and skill

which prudent men are accustomed to use under similar circumstances." Shearman & Red. on Neg. sec. 266, and cases there cited; Story on Bail. sec. 601; *Ficker* v. *Jones*, 28 Cal. 627; *Wheaton* v. *A. B. & M. R. R. Co.* id. 583; *Stokes* v. *Saltonstall*, 13 Pet. 181; *The Nitro-Glycerine Cases*, 15 Wall. 537; Angell on Carriers, secs. 521–524, 568, and cases cited; Whart. on Neg. sec. 627, n. 3; 2 Kent Com. 601, and notes; Hutchinson on Car. 498, 502; *Ind. & St. Louis R. R. Co.* v. *Horst*, 93 U. S. 291; *Higley* v. *Gilmer et al.* 3 Mont. 90; *Boyce* v. *Cal. Stage Co.* 25 Cal. 468.

The instructions in this case were fully up to the standard required in the foregoing cases, and were applicable to the case and not contradictory or inconsistent with each other.

4. Is the verdict supported by the evidence, and are the damages excessive?

In consequence of the accident and injury, the plaintiff lost his foot above the ankle, which is an irreparable injury and for life. But the physicians testify that his life is not likely to be thereby shortened, and the testimony is that his capacity for his occupation (that of bookkeeping) is not materially lessened in consequence of the injury.

The uncontradicted testimony as to the accident and the cause of it is as follows: "On the 30th day of June, 1879, the plaintiff, who was a member of the territorial legislature, in company with six other members, and two or three other persons, took passage on one of defendants' stage coaches, at the town of Deer Lodge, bound for the town of Helena. When within six or seven miles of their destination, and while the coach was proceeding on its way at a moderate rate of speed, there was met on the road a man on horseback, driving before him a pack animal, loaded with a camping outfit and a buffalo robe. When the man on horseback and the pack animal were first seen, they were within about three

hundred yards of the coach. There were attached to the coach four horses, the leaders being the Buckskin horse and another. The leaders became frightened at the pack animal, but still approached towards it for a short distance, and then finally stopped. Then the leaders whirled around to the left, and in doing so broke the tongue of the coach and undertook to run away. While the horses were running fast, the passengers leaped from the coach, the plaintiff being the last to leave it, and in jumping and striking on the ground his leg was broken, and it became necessary to amputate his foot. The coach was not overturned, and the driver stopped the horses within fifty or seventy-five yards of where the accident occurred."

In a civil case, an appellate court will not disturb the verdict of a jury, if there is evidence to support it, unless the same seems to have been the result of passion or prejudice.

In this case there is testimony to the effect that the driver, at the time of the accident, was drunk, and that the Buckskin horse was at the time unsafe and unfit for the business in which he was used. But the clear weight of the testimony strongly favors the claim of defendants, that the driver was entirely sober at the time of the accident; that he was one of the best stage drivers in the country, and that the Buckskin horse was thoroughly well broken and gentle, and suitable to be used on a stage coach. This being so, it looks as though the injury to the plaintiff · was the result of unavoidable accident, and that this large verdict comes from something outside of the testimony. The verdict is too large. We have been unable to find one so great even where the injury was the result of wilful negligence or gross carelessness.

In the case of *The Union Pacific R. R. Co.* v. *Hand*, 7 Kans. 393, the court says: "Of course, courts are reluctant to interfere with the verdicts of juries, on the

ground of excessive damages; but to uphold them where a great wrong has been done, would, as a precedent, be doing an infinite wrong to the community. The rights of parties are submitted to the unbiased judgment of juries, not to their passions or prejudices, and where it is apparent that these feelings have entered into and influenced their decision, it becomes the duty of the court to see that a tribunal organized to administer justice is not perverted from its proper purpose to become the instrument of oppression and injustice."

There is no pretense or claim that the injury was wilful, or that there was gross negligence, and if the case had been between two strangers unknown to the jury, and tried on this evidence, we feel confident that if there had been a verdict at all for the plaintiff, it would have been for a very much less sum. The injury to the plaintiff is permanent, but it does not endanger his health or shorten his life, or incapacitate him in his business. The evidence does not support this verdict. We cannot say that there is no evidence to support a verdict for such an amount as the plaintiff ought to recover, and this verdict and the judgment thereon ought to be reduced to that amount. The judgment is hereby reduced to the sum of $10,750, and affirmed as to that amount.

*Judgment modified and affirmed.*