Hon. EDGAR N. HARWOOD, $\Big\}$ Associate Justices.
Hon. WILLIAM H. DE WITT,

---

## IN RE DAVIS' ESTATE.

[Argued July 3, 1891. Decided July 13, 1891.]

CHANGE OF VENUE — *Appealable order.* — An order denying a motion for a change of venue is an appealable order, and an appeal therefrom is regulated by the provisions of section 421 of the Code of Civil Procedure. (*In re McFarland's Estate*, 10 Mont. 445, affirmed.)

APPEAL FROM PORTION OF AN ORDER. — An appeal may be taken from a portion of an order. (*Barkley* v. *Logan*, 2 Mont. 296; *Plaisted* v. *Nowlan*, 2 Mont. 359, distinguished.)

APPEALS — *Practice.* — Where two appeals have been taken from an order and each appeal is taken from the whole order as well as a specified part thereof, the practice if irregular will not deprive the appellant of any substantial right.

CHANGE OF VENUE — *Prejudice of judge.* — Prejudice or bias of the presiding judge is not a legal ground upon which a motion for a change of venue may be granted in a civil action or probate proceeding in this State, there being no statute expressly disqualifying a judge upon that ground in such actions or proceedings. (*Godbe* v. *McCormick*, 1 Mont. 105, reviewed.)

SAME — *Judicial discretion.* — An order refusing an application for a change of venue will not be set aside in the absence of an abuse of judicial discretion. (*Territory* v. *Corbett*, 3 Mont. 50; *Kennon* v. *Gilmer*, 5 Mont. 257; *Territory* v. *Manton*, 8 Mont. 95, cited.)

SAME — *Prejudice of citizens.* — In the case at bar the contestants of the probate of a will demanded a trial by jury of the issues involved in the contest, and moved for a change of venue upon the ground of prejudice of the inhabitants of the county and that an impartial trial could not be had therein. It ap-

peared at the hearing from the affidavit of a non-resident that he had interviewed about fifty people, residents of the county in question, and that with two exceptions was advised that there was a strong sentiment in the county, and particularly in the town of Butte, the county seat thereof, in favor of the proponent of the will and against the contestants; that the proponent of the will was a favored brother of deceased; that deceased had made most of his money in said county and the people would get the benefit of it in preference to some outside place; that if proponent was successful in the contest he would keep the money there; that if the contestants were successful the money would be turned away; that the persons so interviewed, with two exceptions, refused to make affidavits setting forth their opinions; that affiant had interviewed a reporter of a newspaper of the county who made the same statements as the others but refused to make an affidavit, but said if called into court and made to do so he would tell the truth as he had told affiant; that affiant had visited a number of business places in Butte and had met a great many people who had uttered the same opinions. One of the contestants, also a non-resident, deposed that the First National Bank of Butte belonged, excepting a small ifiterest, to the estate, and did a large business in accommodating the business men of the county; that the newspapers of the county had been trying to mold public opinion against the contestants. Affidavits of business men, residents of the county, were filed by proponent denying the existence of prejudice. It also appeared that only a portion of the banking business of the county was transacted by the bank in question; that proponent had no relation to the newspaper articles; and that the persons interviewed on behalf of the contestants did not give their evidence at the hearing, *and no effort was made to require their attendance.* *Held,* that the refusal to grant the motion was not an abuse of judicial discretion.

*Appeal from Second Judicial District, Silver Bow County.*

Contestants' motion for a change of venue was denied by McHATTON, J.

*Toole & Wallace,* and *McConnell & Clayberg,* of counsel for Appellants.

Appellants contend that upon the facts thus disclosed the judge was biased and prejudiced against them, and on that account a change of venue should have been granted, and cite the following authorities: Code Civ. Proc. 2d subd. § 62, p. 72, 2d subd. § 63, p. 73, and § 110, Prob. Prac. Act. Inserting district judge wherever we find probate judge, we are led to the conclusion that a disqualification of such judge in *probate* matters is not limited by the disqualifying causes enumerated in the statutes with reference to district judges before they were clothed with the powers and duties of probate judges, but that under section 110, *supra,* a broader scope must be given the expression, " if for any cause the judge be

disqualified," and that principles of common justice, applicable in such cases, prevail when a district judge is acting as probate judge, and that the same causes which would disqualify him from sitting in the case would obtain and may be properly urged by either party to the litigation. The fourth subdivision of section 62 distinctly applies to district judges as they existed before being made *ex officio* probate judges, so to speak; and that section 110 of the Probate Practice Act as distinctly applies to probate judges, and is not limited to the disqualifications in such cases as are provided in section 547 of the Code of Civil Procedure. It would seem that the latter section should apply to those cases where the judge was absolutely *prohibited* from acting, and that section 110 is broad enough to include cases of bias or prejudice which *might* be urged at the *option* of either party to the action. In this way efficacy is given to both sections, according to the usual rules of interpretation, and they are made to harmonize with reason and justice. Indeed, it appears to us that section 547 as matter of public policy was intended to be jurisdictional in its operation, and was not intended to exclude other causes of which either party might avail himself or not, as he saw proper. (*Williams* v. *Robinson*, 6 Cush. 333.)

Any other construction is tantamount to saying that the party shall try his case before a judge, notwithstanding he is so biased and prejudiced against him that a fair and impartial trial cannot be had, unless the disqualifications or some of them mentioned in section 547 exist. Such legislation would be questionable, and certainly unreasonable, and an interpretation to this effect will not be given the statute unless its language is so imperative as to admit of no other. By making section 547 prohibitory as to the causes mentioned, leaving the other causes, where they exist, to be made available at the discretion of the parties, would avoid the consequences we have suggested. Should the court be of opinion that such bias and prejudice in the judge as would prevent a fair and impartial trial is a proper ground for a change of venue, we respectfully submit that a change should be had. And if of opinion that a change of venue is proper under the sections of the statute referred to, and that bias and prejudice of the judge is good grounds for such change,

then there is "reason to believe" that an impartial trial cannot be had before him, and the change should be granted under the second subdivision of section 62, *supra*. Bias and prejudice of the judge being, under the construction thus given to the statute, a cause for *change of venue under* section 110, and second subdivision of section 62 and second subdivison of section 63 construed together make reasonable cause to believe that a fair and impartial trial cannot be had before the judge, reasonable cause to believe that none can be had in the county. This is the inevitable result unless subdivision 4 of section 62 applies in cases where the district judge is acting for or in the stead of a probate judge, in *probate matters*, which we deny. A brief glance at the history of the legislation is important in this connection. Sections 62, 63, and 547 were first enacted in the year 1864. Section 110 of the Probate Practice Act was first enacted in 1877.

If we adopt the construction the California courts had placed on sections 62, 63, and 547, prior to their adoption by Montana, then we must conclude that section 547, Civil Code, has no reference to section 110, Probate Act. It could not have been enacted with reference to section 110, Probate Act, because section 110 was not then in existence. Section 110, Probate Act, cannot refer to sections 62 or 547, Civil Code, because by express enactment the provisions of the Civil Code are only made applicable to matters not provided for in the Probate Act. (Prob. Prac. Act, §§ 323, 324.)

We therefore have section 110, Probate Practice Act, standing alone, and must construe it according to legislative intent, if such intent can be discovered. The strongest evidence of this intent is the enactment of section 110. If the legislature supposed that sections 62 and 547 covered the particular matters mentioned in section 110, and desired they should stand on the same footing, section 110 would not have been enacted. If they desired to make more liberal provision for these particular cases they would naturally have enacted section 110. Again, sections 62 and 547 were re-enacted the same time section 110 was first enacted. We must conclude that the attention of the legislature was directed to all these provisions and intended to make a difference. Now, if section 110 stands alone, there can be no reason-

able question but that bias or prejudice of the judge is covered by "any cause." (*Williams* v. *Robinson,* 6 Cush. 333.) That bias and prejudice of the judge is *generally* regarded to be sufficient grounds for a change of venue, we cite: 6 Cush. *supra; Allerton* v. *Eldridge,* 56 Iowa, 709, and authorities cited in n. 6, p. 93, 3 Am. & Eng. Encycl. of Law.

Upon the facts presented the court was called upon to exercise a sound legal discretion as to whether there was reasonable cause to believe that a fair trial could not be had in the county of Silver Bow. We call the especial attention of the court to the particular phraseology of our statute, under which this application for a change of venue was made. The second subdivision of section 62, Code of Civil Procedure, is as follows: "Where there is reason to believe that an impartial trial cannot be had therein." It is clear to be seen that the *fact* that an impartial trial cannot be had in Silver Bow County is not required to exist. And the decisions of the Supreme Court of the United States, under the bankruptcy law, except that the fact of insolvency must exist, are clearly applicable in the interpretation of this section of the statute. (*Toof* v. *Martin,* 13 Wall. 45; *Grant* v. *First Nat. Bank,* 97 U. S. 80; *Buchanan* v. *Smith,* 16 Wall. 277; *Dutcher* v. *Wright,* 94 U. S. 553, 557; *Merchants' Nat. Bank* v. *Cook,* 95 U. S. 346.) Under our statute an appeal from an order of this kind is expressly provided for, showing that it is expressly made a question for review in this court, and that the authorities requiring an effort to procure an unbiased jury to be first made are inapplicable here. And so it is, the question presented to the trial court was, is there *reasonable cause to believe* that an impartial trial cannot be had, under the facts before it, and not whether as a *fact* such a trial could be had. Upon this proposition we contend that the court did not exercise a sound legal discretion upon the *facts* presented on this application. Discretion, when applied to a court of justice, means a sound discretion guided by law; it must not be arbitrary, vague, or fanciful, but legal and regular. (Lord Mansfield in *Rox* v. *Weekes,* 4 Burr. 25–29. And see *Rookes' Case,* 5 Coke, 100 *a.*)

If a sound legal discretion under the *facts* was not exercised by the judge of Silver Bow County, a change should be ordered

by this court. That the application should have been granted upon the bias against appellants engendered on account of their non-residence, and the fact that seven eighths of this vast estate, comprising one fifth of the taxable property, would be taken from the county on that account; the residence of respondent in the county, his connection with a wealthy bank, and its influences; the local prejudice and general interest manifested; the discussion of the question by the newspapers and leading business men, making it a matter of public interest, and diverting public sentiment into a state of hostility to contestants, etc., etc., entitle respondents to a change of venue upon reasonable and fair principles. (*Mow* v. *Foster*, 31 Fed. Rep. 53; *Taylor* v. *Gardner*, 11 R. I. 182; *Shaw* v. *Hamilton*, 10 Ind. 182; *Smith* v. *Holter*, 1 Law Rep. [N. C.] 578; *Shattuck* v. *Myers*, 13 Ind. 47; 74 Am. Dec. 236, and note on p. 244; *Kennon* v. *Gilmer*, 5 Mont. 257; *People* v. *Probate Court*, 46 Cal. 245.) As to publications in newspapers, see *People* v. *Webb*, 1 Hill, 179. As to negative affidavits, see *State* v. *Nash*, 7 Iowa, 370, 374. As to rules of court, see *Krutz* v. *Griffith*, 68 Ind. 444.

*W. W. Dixon, W. F. Sanders, Forbis & Forbis,* and *M. Kirkpatrick,* of counsel for Respondent.

This court has no jurisdiction because: *First.* The order is not an appealable one. It is an order refusing to change the place of trial. It will hardly be disputed that this order is only an interlocutory one, and such orders are not appealable unless expressly made so by statute. (Hayne on New Trial and Appeal, § 188.) The order is made in a contest over the probate of a will pending under the provisions of the Probate Practice Act of Montana. The appeal from the order must, therefore, be authorized and governed by the provisions of the Probate Act. Section 324 of that act (p. 354, 2d div. Comp. Stats. of Mont. of 1887) specifies from what judgments or orders in probate proceedings appeal can be taken to the Supreme Court. This section is the only one anywhere in the laws of Montana providing for such appeals in probate matters. Orders relating to changes of venue are not mentioned in it. To allow appeals to be taken from such orders would be inconsistent with section 324, and could not be authorized by sec-

tion 323. This last is a general section. Section 324 relates specially to new trials and appeals. Under our State Constitution the Probate Courts were merged in the District Courts, but the proceedings in civil and probate matters are still different and governed respectively by the Civil and Probate Practice Acts. Section 4 of article xx. of the Constitution provides that in the laws of Montana "District Court" shall be substituted for "Probate Court" wherever the words occur. The evident intention was that all appeals which could be taken to the Supreme Court in probate matters should be provided for in section 324 of the Probate Practice Act, and all appeals which could be taken in civil cases should be provided for (as they are) in the Civil Practice Act.

The California probate law, in force when our probate act was adopted and from which our own was taken, contains provisions exactly corresponding with sections 323 and 324 in our act (see Harston's Practice, § 969, for corresponding section to 324), and it has been frequently held by the courts there that section 324 specifies the only judgments or orders from which appeals can be taken in probate proceedings. (Hayne on New Trial and Appeal, § 200; *Peralta* v. *Castro*, 15 Cal. 511; *Blum* v. *Brownstone*, 50 Cal. 293; *Smith's Estate*, 51 Cal. 564; *Montgomery's Estate*, 55 Cal. 210; *Keane's Estate*, 56 Cal. 407; *Moore's Estate*, 68 Cal. 394. And particularly, *Calahan's Estate*, 60 Cal. 232; *Dean's Estate*, 62 Cal. 613; *Ohm's Estate*, 82 Cal. 160; *Moore's Estate*, 86 Cal. 58. And see, also, *Stebbins* v. *Savage*, 5 Mont. 253.)

Section 110 of the Probate Practice Act, referred to by appellants, provides for a change of venue for only one cause, viz., disqualification of the judge, thereby excluding in probate proceedings any other causes. Therefore appellants' application for the change, so far as it is based upon the alleged prejudice of the people of the county, is not good. The court below could not have granted a change for that reason, and it cannot be considered here upon appeal. Besides, appellants' motion did not mention the disqualification of the judge or follow the language of section 110. There is only one motion for a change of venue in the record, although it embraces two grounds. There is only one order overruling the motion.

There are, however, two separate notices of appeal and two separate undertakings. Each of these notices is of appeal from a part of the order only. No appeal lies from part of a judgment or order. (*Barkley* v. *Logan*, 2 Mont. 296; *Plaisted* v. *Nowlan*, 2 Mont. 359.) If this could be considered as two appeals by the same parties from one order, it would be equally irregular. No court would sanction such a practice. Even if an appeal would lie from part of an order that would not justify two appeals from one order. If this appeal can possibly be good for any purpose under the notices given, it should be heard only upon the ground stated in one of the notices, and appellants should be compelled to elect upon which of their notices they would rely.

Bias and prejudice on the part of the judge is not made by law a ground for a change of the place of trial. Both the Code of Civil Procedure and the Probate Act authorize a change of venue when from any cause the judge is disqualified from acting. (Comp. Stats. p. 72, § 62; p. 298, § 110.) The only matters which disqualify a judge are: (1) That he is a party to or interested in the action. (2) That he is related to either party by consanguinity or affinity within the third degree. (3) That he has been attorney or counsel for either party. (Comp. Stats. p. 203, § 547.) "The law establishes a different rule for determining the qualification of judges from that applied to jurors." (*McCauley* v. *Weller*, 12 Cal. 523, 524; *People* v. *Williams*, 24 Cal. 31; *People* v. *Shuler*, 28 Cal. 490, 494; *Bulwer Con. Min. Co.* v. *Standard Con. Min. Co.* 83 Cal. 617; *People* v. *Mahoney*, 18 Cal. 181, 186; *Allen* v. *Reilly*, 15 Nev. 452, 455.) But it is contended by appellants that the words, "if for any cause the judge be disqualified," in section 110 of the Probate Act, must receive a broader construction than the same words in section 62 of the Code of Civil Procedure —a construction so broad as to cover bias and prejudice on the part of the judge. The argument is that sections 62, 63, and 547 of the Civil Code were first enacted in 1864, and section 110 of the Probate Act in 1877; that section 547 cannot have been enacted with reference to section 110, because section 110 was not then in existence; that section 110 cannot refer to sections 62 or 547, because by express enactment the provisions of

the Civil Code are only made applicable to matters not provided for in the Probate Act. (Prob. Act, §§ 323, 324.)

Again it is said sections 62 and 547 were re-enacted at the same time section 110 was enacted, which is regarded by counsel as further evidence of the legislative intention to make a difference in the meaning of the sections. Hence it is concluded that section 110 stands alone, and must be construed independently of the sections of the Civil Code and according to the legislative intent, the strongest evidence of that intent being the enactment of section 110. To this we reply: (1) That granting the validity of the foregoing argument, it does not follow therefrom that the same language used in the same system of laws should not receive the same construction in every instance of its use: *Non constat* that the words "if for any cause the judge be disqualified," in section 110, are to be otherwise construed than the same words in section 62, unless there be a plain legislative direction to that effect, and there is no such direction. Again, granting that section 110 of the Probate Act is to be construed independently of sections 62 and 547 of the Civil Code, it follows that other sections of the two Codes similarly related must also be independently construed. Such, for example, as section 324 of the Probate Act and section 419 of the Civil Code. These sections relate to appeals, and designate the orders and judgments from which appeals may be taken to the Supreme Court from the Probate and District Courts respectively. The allowance of an appeal from an order refusing to change the place of trial appears in the Civil Code of 1866 (p. 95), and therefore was enacted prior to section 324 of the Probate Act. Again, sections 324 and 419 have been simultaneously re-enacted in the several revisions of the laws of Montana. Those sections are, therefore, according to appellants' argument, to be construed independently of each other, and it follows that section 324 provides the only probate orders from which an appeal lies to this court. Orders granting or refusing a change of the place of trial are not designated among the orders made appealable by that section.

It is contended that the people of Silver Bow County are biased and prejudiced against the appellants to such an extent that a fair and impartial trial cannot be had in that county. The charge rests almost entirely upon the affidavit of G. O.

Freeman, who was sent to Silver Bow County to procure, if possible, some evidence to support it.    It will be noted, however, that none of the persons interviewed hesitated to express their opinions to the agent of the contestants, and that, too, without an injunction of secrecy; and gave him to understand that while they did not desire to interfere in the matter, they would, if compelled, testify in court to the matters which they had stated to him.    Contestants could easily have compelled the testimony of such unwilling witnesses by subpœna and attachment, but it is a significant fact that they took no steps to do so.    And it is passing strange that Mr. Freeman failed to support himself by the corroborative testimony of *the two persons*, who, as he says, were willing to give him their affidavits.    His affidavit merely gives the unsworn statements of persons whose names are suppressed, and whose direct testimony could have been easily procured.    Such evidence, if not incompetent, is clearly insufficient. (*People* v. *Mahoney*, 18 Cal. 181; *People* v. *Shuler*, 28 Cal. 490, 494; *People* v. *Williams*, 24 Cal. 31, 36; *People* v. *Elliott*, 80 Cal. 298.)    The newspaper comments were not procured by the respondent, nor do they afford any evidence of the existence of bias or prejudice against the appellants among the people of the county.    An order granting or refusing a change of venue on this ground is a matter resting in the sound discretion of the court, and is subject to review only for abuse of that discretion.    This is the settled rule in California, from which State the legislation of Montana on this subject was adopted.    And it is also the established rule in this jurisdiction. (*People* v. *Congleton*, 44 Cal. 92; *People* v. *Mahoney*, 18 Cal. 181; *People* v. *Fisher*, 6 Cal. 155; *Watson* v. *Whitney*, 23 Cal. 376, 378; *People* v. *Elliott*, 80 Cal. 296, 298; *People* v. *Goldenson*, 76 Cal. 328, 337–339; *Avila* v. *Meherin*, 68 Cal. 478; *Territory* v. *Manton*, 8 Mont. 95, 102; *Kennon* v. *Gilmer*, 5 Mont. 257.)

Appellants' brief in reply.

In reply to the position that the appeals should be dismissed because the order appealed from is not included in the orders named in section 324 of the Probate Practice Act, we need only cite: *McFarland's Estate*, 10 Mont. 445; Code Civ. Proc.

§§ 421, 444. Section 444 of the Code of Civil Procedure provides that an appeal may be taken from the District Courts in the following cases: "*First.* From a final judgment, or any part thereof, entered in any action or special proceeding commenced in those courts, or brought into those courts from other courts." Section 421 of the Code of Civil Procedure, subdivision 1, limits the time in which such appeals may be taken to one year. Section 238 of the Code of Civil Procedure defines a judgment as follows: "A judgment is the final determination of the rights of the parties in an action or proceeding." The administration of an estate, the probate of a will, and all steps attendant thereupon, are not to be grouped as one proceeding, under the *McFarland Case, supra.* Nor is each step in the matter of an estate a proceeding within the law. But many steps in the matter of an estate are separate proceedings. As Justice HARWOOD says: "A careful study of the Code will reveal the fact that the term 'case and proceeding' is used in a much broader and less technical sense than the term 'action.' The term 'proceeding' is used in the Probate Code as a general designation of the action and procedure whereby the law is administered upon the various subjects within the probate administration." (*McFarland's Estate, supra.*) .

An application for a change of venue in a probate case is a "proceeding" within the meaning of the term, and that a decision thereon is a judgment from which an appeal will lie under the first subdivision of section 444 of the Code of Civil Procedure. It is "a final determination of the rights of the parties in a proceeding." If we are wrong in this position our appeals may still be maintained under the second subdivision of section 444 of the Code of Civil Procedure, which allows appeals "from an order changing or refusing to change the place of trial." The law allows a jury in cases of contests of wills (§ 20, Prob. Prac. Act); and requires the trial to be conducted as in civil cases. (§ 21, Prob. Prac. Act.) This would surely give us a right to the same kind of a jury as in civil cases. (See, also, § 323, Prob. Prac. Act.)

There were two motions for a change of venue, one on the ground of prejudice of the judge, the other on the ground of prejudice of the people. Both came on to be heard together

and were decided together by the court. That two appeals under such circumstances are proper, see *Harmon* v. *San Francisco Ry. Co.* 86 Cal. 617. There can be no objections to incorporating two appeals in the same transcript, if they are so separated that the court can distinguish what part of the transcript belongs to each appeal. (*McDonald* v. *McConkey*, 57 Cal. 326.) The court below could not abridge our right of appeal on both motions by refusing to decide them separately, and by entering but one order. The cases cited in 2 Mont. are no longer law, because since their determination the statute has been amended so as to read " from a final judgment, *or any part thereof.*" In California, under a statute like ours, it seems that an appeal may be maintained from a part of an order. (*Dimick* v. *Deringer*, 32 Cal. 488.)

In addition to the foregoing, which would seem to be conclusive of the question, section 324 is, under the decision of the court, entirely eliminated from the statute, and section 445, under the present organization of our courts, is entirely superseded and inoperative. Hence, in so far as appeals are concerned, where not specially provided for in the Probate Practice Act, the Code of Civil Procedure prevails, and sections 421, 431, and 444 are properly employed in bringing these proceedings before this court. Section 323 has never been repealed or declared void, was in full force when this appeal was taken, and the case of *Hedges* v. *Commissioners*, 4 Mont. 288, et seq., authorize the interpretation we have given the statute. Section 323 reads: " Except as otherwise provided in *this title* the *provisions* of the Civil Practice Act of this Territory *are applicable* to and *constitute* the *rule of practice* in the proceedings mentioned in this title." If, as claimed, there is no provision for a change of venue in *jury trials* in probate matters, and no provision for appeals in the title Probate Practice Act, there certainly is in the Civil Practice Act, under which appellants have made their motion and taken their appeal.

BLAKE, C. J.—This is an appeal from an order overruling the motion of Henry A. Root and Maria Cummings for a change of venue upon the following grounds:—

" *First.* There is reason to believe that an impartial trial can-

not be had in said county of Silver Bow. *Second.* The citizens, inhabitants, and tax-payers of said county are interested in said proceedings, are biased and prejudiced against contestants, and in favor of proponent; and because the ends of justice will be promoted by said change."

The order was made May 2, 1891. The body of one notice of appeal recites "that the contestants . . . . appeal from the order of the court overruling their motion for a change of venue on account of the prejudice of the judge of said court, . . . . and from the whole thereof, to the Supreme Court of the State of Montana." In another notice this language is used: "The contestants . . . . appeal from the order of the court overruling their motion for a change of venue on account of the prejudice of the inhabitants of the county, and for the reason that an impartial trial cannot be had therein, . . . . and from the whole thereof, to the Supreme Court of the State of Montana."

The issues which are to be tried in this proceeding should be considered before we discuss the questions which have been raised.

Andrew J. Davis died March 11, 1890, in the county of Silver Bow, in this State. John A. Davis filed July 24, 1890, in the court below, his petition, and alleged that the deceased had left a will which first came to his knowledge and possession upon the fifteenth day of July, 1890. He therein stated the value of the estate to be about four and one-half millions of dollars, and the heirs to be fourteen persons, who, with the exception of the petitioner, are non-residents. The entire estate, subject to a life maintenance of three parties, was devised by this instrument to said John A. Davis. The will, according to the record, was executed in the State of Iowa in the month of July, 1866. Said Root and Mrs. Cummings, who are two heirs of the deceased, filed in writing their objections to the probate of this instrument, and averred in substance that the same was a forgery, and, if ever executed, was revoked by the deceased during his lifetime by the making of other wills. John A. Davis in his replication denies that the deceased ever executed another will, and alleges that if he had, the instrument which was made in the year 1866 was republished. The contestants demanded a trial by a jury of these issues.

The affidavits, pleadings, and documentary evidence, which were submitted upon the hearing of the motion, relate to the grounds which are specified in the notices of appeal. It is claimed by John A. Davis, who is the respondent, that this court has no jurisdiction to review the action of the court below. The contention is that this order is not enumerated in section 324 of the Probate Practice Act, concerning appeals from the Probate Court, and that there is no other legislation upon this matter.

These proceedings recently received the careful investigation of this court in the *Estate of McFarland*, 10 Mont. 445, and were adjudged invalid; and it was further held that appeals in the District Court in "matters of probate" must be regulated by section 421 of the Code of Civil Procedure. Under its terms, an appeal may be taken "from an order granting or refusing to grant a change of the place of trial." We are thereby expressly empowered to inquire into the merits of this appeal. But the respondent insists that each of the notices is of an appeal from a part of the order before us, and that such practice is without legal sanction. The transcript contains one motion for a change of the venue, which sets forth two grounds, and one order overruling the same, and two distinct notices of appeal and undertakings on appeal. We confess that we do not understand the reasons for bringing into this tribunal more than one appeal in this matter.

The judge of the court below, however, seems to have treated the subject in like manner, and employs in the order these words: "The motions of contestants for a change of venue herein, having come on regularly to be heard . . . . it is now ordered and adjudged that said motions for a change of venue be, and the same is denied and overruled." The counsel for the appellants may have been controlled by this peculiar phraseology. The Supreme Court of California allows an appeal to be taken from a portion of an order. (*Dimick* v. *Deringer*, 32 Cal. 488; *Estate of McCauley*, 50 Cal. 544.) The cases of *Barkley* v. *Logan*, 2 Mont. 296, and *Plaisted* v. *Nowlan*, 2 Mont. 359, on which the respondent relies, are easily distinguished. When they were decided, the statute relating to appeals was as follows: "An appeal may be taken to the

Supreme Court from the District Courts in the following cases:
*First.* From a final judgment entered in an action or special
proceeding commenced in those courts, or brought in those
courts from other courts." (Civ. Prac. Act, 7th Sess. § 380.)
This section was subsequently amended and now reads: "An
appeal may be taken to the Supreme Court from the District
Courts in the following cases: *First.* From a final judgment,
*or any part thereof,* entered in an action or special proceeding
commenced in those courts, or brought into those courts from
other courts." (Code Civ. Proc. § 444.)

Aside from this radical difference between the statutes, *supra,*
it is obvious that a judgment, which is the final settlement of
the rights of the parties to an action, cannot be placed upon
the same level with an order respecting the place of a trial.
In the case at bar, each appeal is from the whole order, as well
as a specified part thereof, and the transcript embodies without
any omission every act of the court and the testimony which
was adduced. If we regard as irregular the taking of two ap-
peals, when one is sufficient, the fact does not in this instance
deprive the contestants of any substantial right.

We will now consider the first ground on which the motion
for a change of the place of trial is founded: "There is reason
to believe that an impartial trial cannot be had in said county
of Silver Bow." It is contended that this subdivision includes
the ground that the judge of the court below is biased and
prejudiced against the appellants, and our attention is directed
to the following statutes: —

"If an action or proceeding is commenced or pending in a
court, and the judge or justice thereof is disqualified from act-
ing as such, or if, for any cause, the court orders the place of
trial to be changed, it must be transferred for trial to a court
the parties may agree upon by stipulation in writing, or made
in open court, and entered in the minutes; or if they do not so
agree, then to the nearest court where the like objection or cause
for making the order does not exist, as follows: . . . . If in
the Probate Court, to some other Probate Court." (Code Civ.
Proc. § 63.) "The court may, on good cause shown, change
the place of trial in the following cases: . . . . When there is
reason to believe that an impartial trial cannot be had therein."

(Code Civ. Proc. § 62.)   "When a petition is filed in the Probate Court, praying for admission to probate of a will, or for granting letters testamentary or of administration, or other proceedings are pending in the Probate Court for the settlement of an estate, and the presiding judge of the court is disqualified to act from any cause, upon his own or the motion of any person interested in the estate, he must make an order transferring the proceeding to the Probate Court of an adjoining county, . . . . and thereafter the Probate Court to which the proceeding is transferred shall exercise the same authority and jurisdiction over the estate, and all matters relating to the administration thereof, as if it had original jurisdiction of the estate." (Prob. Prac. Act, § 110.)   Under the Constitution, the judge of the District Court possesses the jurisdiction which was formerly lodged in the probate judge, and it is argued that a broad and liberal construction must be given to the clause, "disqualified to act from any cause." We think there are other statutes which should be examined in this connection.   "A judge shall not act as such in any of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity within the third degree; or when he has been attorney or counsel for either party in the action or proceeding." (Code Civ. Proc. § 547.)   This number of disqualifications has been enlarged in the following section: "No Probate Court shall admit to probate any will, or grant letters testamentary or of administration in any case where the judge thereof is interested as next of kin to the decedent, or as a legatee or devisee under the will, or when he is named as executor or trustee in the will, or as a witness thereto, or is in any other manner interested or disqualified from acting." (Prob. Prac. Act, § 109.)

The bias or prejudice of the judge is not referred to as a disqualification, or as a cause for the change of the place of trial, in any statute affecting the District or Probate Courts in civil or probate proceedings.   But in the title regulating the procedure in the courts of justices of the peace, we find the mandatory provision that "if either party make affidavit that he has reason to believe, and does believe that he cannot have a fair and impartial trial before such justice, the action shall be transferred

to some other justice of the same county; and in case of a jury being demanded, and affidavit of either party is made that he cannot have a fair and impartial trial on account of the bias or prejudice of the citizens of the precinct or township against him, the action shall be transferred to some other justice of the peace in the county." (Code Civ. Proc. § 780; *People ex rel. v. Hubbard*, 22 Cal. 34.) In the Criminal Practice Act, it is provided as follows: "Any defendant, in any indictment or information, may be awarded a change of venue upon a petition setting forth that he has reason to believe that he will not receive a fair trial in the court in which such indictment or information may be pending, on account that the judge is interested or prejudiced, or is of kin to, or shall have been counsel for either party, . . . . or that the inhabitants of the county are prejudiced against the applicant, so that he cannot expect a fair trial." (§ 226.) The intention of the legislature is uttered plainly and directly with relation to the bias or prejudice of justices of the peace and the judges of the courts where an indictment or information is pending. What legal inference can be drawn from the comparison of the statutes *supra?* One potent fact in the history of this legislation during the territorial period is very useful and important in expounding the will of the law-makers. We allude to the question which arose in *Godbe* v. *McCormick*, 1 Mont. 105. When the fourth legislative assembly convened in November, 1867, section 21 of the Civil Practice Act was in effect the same as section 62, *supra*, of the Code of Civil Procedure. By an act approved December 6, 1867, this section was amended in some particulars as follows: "*Second*. When there is reason to believe that an impartial trial cannot be had in said cause by reason of the bias or the prejudice of the judge before whom the same is pending, or by reason of the bias or prejudice of the citizens of the county where said action is pending. . . . . *Provided, however*, that when an affidavit is made by any party to said action or proceeding, or by his or their attorney, that the party making the application, and on whose behalf the affidavit is made, cannot have a fair and impartial trial in said action by reason of the bias or prejudice of the judge before whom said action is then pending, such judge shall, and it is hereby made

his duty to immediately order said action to be transferred to some other county in said Territory, outside of his judicial district. ; . . . . This act shall apply to all actions now pending or that may hereafter be brought in the Territory of Montana." (Stats. 4th. Sess. 68.)   McCormick filed December 7, 1867, his motion and affidavit for a change of the venue of the action by reason of the bias and prejudice of the judge.   The court sustained a motion to strike from the files these papers and tried the cause.   It was held in *Godbe* v. *McCormick, supra,* that this act was upon a rightful subject of legislation, and did not divest the District Courts of their common-law jurisdiction.   The judgment was reversed upon the sole ground that the court was required to obey the statute and change the venue. The same legislative body passed the Civil Practice Act, which was approved December 23, 1867, and repealed the amendment, *supra,* and section 21 was re-enacted without any modification. The law upon this subject has remained in force since that date.

The following statute has existed from its approval, January 11, 1865: "That the common law of England, so far as the same is applicable and of a general nature, and not in conflict with special enactments of this Territory, shall be the law and rule of decision, and shall be considered as of full force until repealed by legislative authority." (Stats. 1st. Sess. 356.)   In *Turner* v. *Commonw.* 2 Met. (Ky.) 626, the court said: "At common law there were but two objections that went to the disqualification of a judge to try a cause, to wit, interest in his own behalf in the result, or being of kin to others interested therein. (2 Bacon's Abridgment, title 'Courts.')"   In *Peyton's Appeal,* 12 Kan. 407, the court said: "It will be admitted that at common law prejudice did not disqualify a judge."   In the opinion in *Conn* v. *Chadwick,* 17 Fla. 439, by Mr. Justice Westcott, it is said: "In the time of Bracton and Fleta, a judge might be refused for good cause; but at the common law as administered in England and the United States for centuries, judges and justices could not be challenged.   There were disqualifying causes, such as interest, and being of kin to the party."

We will comment upon the decisions of States in which similar statutes are enforced.   A leading case upon this branch of our

inquiry is *McCauley* v. *Weller*, 12 Cal. 500, and Chief Justice Terry in the opinion says: "The application for a change of venue was made upon affidavits setting up that defendants could not have a fair and impartial trial in the court below, on account of the bias of the presiding judge." The statute, which is in substance section 547, *supra*, of the Code of Civil Procedure, is cited, and the court proceeds: "These are the only causes which work a disqualification of a judicial officer. The exhibition by a judge of partisan feeling, or the unnecessary expression of an opinion upon the justice or merits of a controversy, though exceedingly indecorous, improper, and reprehensible, as calculated to throw suspicion upon the judgments of the court and bring the administration of justice into contempt, are not under our statute sufficient to authorize a change of venue on the ground that the judge is disqualified from sitting."

The additional reasons, which are presented in support of this rule, appear to be unsound, and we concur with Mr. Hayne in the following observation: "The true reason of the rule, in *McCauley* v. *Weller*, that bias does not disqualify a judge, is that such ground is not specified in the statute as a ground of disqualification." (New Trial and Appeal, § 32.) This authority has been followed in many cases. (*People* v. *Williams*, 24 Cal. 31; *People* v. *Shuler*, 28 Cal. 490.) The case of *McCauley* v. *Weller*, *supra*, was heard at the January term, 1859, and *Bulwer Con. Min. Co.* v. *Standard Con. Min. Co.* 83 Cal. 589, was determined at the April term, 1890, and it is said: "As to the appeal from the order denying defendant's motion to change the place of trial, it is to be observed that the only ground of the motion alleged or attempted to be proved was, that the 'judge of said court is disqualified from acting in said case on account of his bias and prejudice against the defendant and A. Pettibone, its president and resident manager,' which is not one of the grounds of disqualification enumerated in section 170 of the Code of Civil Procedure, and therefore not a ground of disqualification." The commissioners of the State of California with reference to this section say in their report: "The three causes stated in the text are the only ones which work a disqualification of a judicial officer." In *Allen* v. *Reilly*, 15 Nev. 452, the court said: "Defendant then moved for a

change of venue, on the ground that he could not have a fair and impartial trial before the judge presiding, because he and defendant had been, and then were, bitter personal enemies. The motion was supported by the defendant's affidavit setting out the facts just stated, but it was denied by the court. The judge was not disqualified under the statute. (Comp. Laws, 950.)" The statutes of California and Nevada, which are relied on in the opinions *supra*, are identical in their provisions with section 547, *supra*, of our Code of Civil Procedure.

Let us weigh the authorities with which the appellants sustain their position. In *Peyton's Appeal, supra*, a motion was made that the venue be changed on the ground of the bias or prejudice of the judge. It was held that the proceeding before the court was criminal in its nature, and the defendant had the right to have the same removed under this provision of the Criminal Code: "Where the judge is in any wise interested or prejudiced . . . . ." The fourth section of the act relating to the District Courts provides for the selection of a judge *pro tem.* in certain cases. " When the judge is interested, or has been of counsel in the case or subject-matters thereof, or is related to either of the parties, or otherwise disqualified to sit." In ascertaining the meaning of the expression, " or is otherwise disqualified to sit," the case of *Turner* v. *Commonw., supra*, is approved, and it was decided that the change of venue should have been granted, or the trial should been had before a judge *pro tem.*

The appellant, in *Turner* v. *Commonw., supra*, filed affidavits, and asserted that the presiding judge was his personal enemy, and that he believed that he could not and would not do him justice upon the trial. He asked that some impartial lawyer be substituted in the place of this judicial officer, and the application was refused. It is stated in the opinion of the court by Mr. Justice Stiles that the statute of 1815 "provided that in all suits cognizable in any of the Circuit Courts of the State where either party should conceive that he or she would not receive a fair trial in the court in which such suit might be pending, owing to the interest or prejudice of any judge or judges of said court, . . . . such party might, upon the terms and in the manner therein prescribed, apply for and obtain a change of venue. Thus making the prejudice of the judge a ground for

change of venue." In order that another remedy might be obtained by the election of a special judge under these circumstances, the framers of the Constitution of the State of Kentucky inserted this section: "The general assembly shall provide, by law, for holding Circuit Courts, when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside." In pursuance of this power, the legislature enacted a statute which reads as follows: "When, from any cause, the judge of the circuit fails to attend, or, if in attendance, cannot properly preside in a cause or causes pending in such court, the attorneys of the court who are present shall elect one of its members then in attendance to hold the court for the occasion, who shall accordingly preside." The court construed the phrases, "any cause" and "properly preside," and concluded that the framers of the Constitution by the section, *supra*, "must be presumed to have referred to the laws then in force prescribing what was a legal cause to prevent a circuit judge from trying a case," and that said Act of 1815 specified among other such causes the prejudice of a judge. It was therefore adjudged improper for the circuit judge to preside in the case, after the objections of the appellant were presented, and try and determine the issues.

It is pertinent to notice at this time a sentence from the American and English Encyclopædia of Law: "Bias or prejudice on the part of the judge is generally held to be a sufficient ground for a change of venue." (Vol. 3, p. 93.)

We have examined all the cases which are referred to in the accompanying note, and comprise the appellate courts of the States of Illinois, Indiana, Iowa, Wisconsin, Minnesota, and Kansas. The corner-stone of every decision is a statute, which defines in express terms the bias or prejudice of the judge to be a disqualification. Some of the acts which are quoted are as mandatory as the foregoing law in *Godbe* v. *McCormick, supra*.

The solitary authority for the principle which is upheld by the appellants is *Williams* v. *Robinson*, 6 Cush. 333. The statute establishing the police court in Taunton provided that the special justice "shall have power, in case of the absence, sickness, interest, or any other disability of the standing justice," to hear and determine the case, "the said cause being assigned on the record." The following entry appears in this book:

"This action is tried by the special justice, the standing justice having, before the action was commenced, heard the facts in the case, as stated by the plaintiff, and being therefore somewhat interested in the plaintiff's favor." The eminent jurist, Mr. Justice Metcalf, in the opinion said: "Conscious bias or prejudice in favor of one of the parties, or against the other, caused by hearing an *ex parte* statement of the facts of the case, is an inability or disability to try the case, within the just meaning of the statutes. . . . . It was not necessary that the statutes should enumerate all the disqualifications of the standing justice. The rules of the common law and the principles of natural justice are to be applied in the construction of these statutes." It was held that the special justice lawfully tried the action.

We are not aware of any other decision which entertains these views. We have declared that the bias and prejudice of a judge did not constitute disqualifications according to the common law. In *Commonw.* v. *McCloskey*, 2 Rawle, 369, Mr. Justice Rogers for the court says: "If the legislature should pass a law in plain, unequivocal, and explicit terms, within the general scope of their constitutional power, I know of no authority in this government to pronounce such an act void, merely because, in the opinion of the judicial tribunals, it was contrary to the principles of natural justice; for this would be vesting in the court a latitudinarian authority which might be abused, and would necessarily lead to collisions between the legislative and judicial departments, dangerous to the well being of society, or at least, not in harmony with the structure of our ideas of natural government. Justice is regulated by no certain or fixed standard, so that the ablest and purest minds might sometimes differ with respect to it." We also cite from Potter's Dwarris on Statutes, 81: "The legislature possesses, certainly an equal, if not a superior right, to the courts, to determine, by *their* opinion, what laws are consistent with the abstract principles of natural justice."

From this review, the deduction is clear that there is no statute which authorizes the change of the place of trial of this proceeding by reason of the bias or prejudice of the judge of the court below. This is the rock on which our judgment stands. We have seen that the legislative assembly has spoken

in emphatic tones of the rights of suitors in Justices' Courts, and defendants in certain criminal proceedings, to procure a change of the venue on account of the bias or prejudice of the judge, but it has been silent for decades upon this cause with regard to parties in the District and Probate Courts. The court below did not have the power to grant the motion for this ground, and it is needless to look at the evidence thereon.

We reiterate our criticism concerning the reasons which have been given by some courts which have reached the same results. We disapprove every suggestion and claim that a judge, who is swayed by personal bias or prejudice, is powerless to injure his foes, or render aid to his friends, because his errors can be corrected upon appeal to a superior tribunal. There are presumptions in favor of his rulings which cannot be ignored, and he can make orders which cannot be disturbed, unless there has been a gross abuse of his discretion.

It is admitted that the place of the trial of this proceeding can be changed under section 62, *supra*, of the Code of Civil Procedure, if the people of the county of Silver Bow are biased and prejudiced against the appellants so that there is reason to believe that an impartial trial cannot be had therein. There are no legal questions for our determination. An order refusing the application for a change of venue will not be set aside in the absence of an abuse of judicial discretion. (*Territory* v. *Corbett*, 3 Mont. 50; *Kennon* v. *Gilmer*, 5 Mont. 257; *Territory* v. *Manton*, 8 Mont. 95.) In these cases the affidavits were adjudged insufficient to support the grounds which had been alleged in the motion. The court points out accurately in *Kennon* v. *Gilmer*, *supra*, the character of the proof which is required, and the form of the affidavit, which purports to narrate the language of the witnesses. These matters are essential, and should be observed to enable the court to decide whether there is bias or prejudice in the community.

This application is accompanied by the affidavits of George O. Freeman and said Root. They also embrace nine clippings from two newspapers, which were published in Butte, the county seat of the county of Silver Bow.

Freeman deposes that he is a resident of Helena, in this State; that he went to Butte March 21, 1891, for the purpose of inter-

viewing the residents and property owners of the county concerning the sentiment respecting the contest of said will; that he remained there until March 30, 1891; that he interviewed in the neighborhood of fifty prominent men of Butte, and asked them what they thought the chances were for a fair and impartial trial; that with two exceptions each of these persons advised him that there was a strong sentiment in the county, and particularly in the town of Butte, in favor of John A. Davis and Andrew J. Davis, Jr., his son, and against said Root and Mrs. Cummings; that these persons said that John A. Davis was an old resident of Butte, and the favored brother of the deceased; that the deceased made most of his money in Butte and said county, and that the people of Butte would get the benefit of it in preference to some outside place; that Andrew J. Davis, Jr., was entitled to have the First National Bank of Butte; that if John A. Davis was successful in said contest, he would respect the wishes of the people of Butte, and keep the money there, and that Butte would get the benefit of it; that if said Root and Mrs. Cummings were successful in said contest, the money of the estate and the proceeds of the property would be turned from Butte, and that Butte would be the loser.

That affiant at each interview had severally requested these persons to make an affidavit setting forth in substance the above facts and opinions, "but that in each and every instance, with but two exceptions, said persons refused so to do, giving as their reasons for such refusal that they did not desire to get mixed up in said matter, unless they were compelled to; that they would not do so willingly. That affiant interviewed one Julian, a reporter upon the Butte Mining Journal, and that Julian made the same statements as the other persons; that Julian refused to make an affidavit, but said that "he did not wish to willingly get himself mixed up in the case; but that if called into court, and made to do so by the judge, he would tell the truth, just as he had told affiant. That affiant visited during this time the following places in Butte: "Lynch's Saloon, the Silver Bow Club, the Mint Saloon, Real Estate Office of W. McC. White, Gamer's Boot and Shoe Store, D. M. Newbro Drug Co. Store, and the several hotels in the city of Butte;" and that he met "a great many people," who in conversations uttered the above

facts and opinions; that the questions about the Davis estate and said contest were matters of general comment; and that "only two persons expressed themselves otherwise than as against the said Root and Cummings, and in favor of John A. Davis and Andrew J. Davis, Jr."

Said Root deposes that he is a resident of said Helena, and, in addition to some of the facts in the affidavit of said Freeman, says that said bank has a large portion of the money and assets of said estate; that said bank with the exception of a small interest belongs to said estate; "and that said bank does a general, large, and extensive business in accommodating the merchants and business men of said city and county;" and that the newspapers of Butte have been trying to mold the minds of the community generally in favor of John A. Davis and against said contestants and non-residents. The respondent files the affidavits of John A. Davis, W. McC. White, Luther C. White, Fred Wey, James Lynch, Robert Grix, Victor E. Goldsmith, James W. Forbis, George W. Irwin, Roderick D. Leggat, and Henry G. Valiton.

The said clippings were published in the Inter-Mountain and Butte Mining Journal, and are confined chiefly to comments upon the action of the court below in appointing John A. Davis to be the general administrator of the estate. These articles, however, viewed as a whole, express in positive and forcible terms the same facts and opinions which are stated in the affidavits of Root and Freeman. One of them, which was printed April 30, 1890, assumes to give the views of fifteen citizens of Butte, who are named by the reporter of the Mining Journal, of the appointment of John A. Davis.

The affidavits of the respondent are made by residents of Butte, and deny that any bias or prejudice relative to the contest of said will exists in Butte or the county of Silver Bow. John A. Davis deposes that the articles were published in the newspapers without his knowledge or wishes; and that said bank "transacts only a portion of the banking business of said city; and that only a portion of the business men of the city of Butte, and of the county of Silver Bow, are customers of, or have any business with said bank, there being four or five other banks doing business in said city of Butte." The parties who

were engaged in business at the aforesaid places have contradicted in their affidavits, respectively, the above statements of Freeman. Forbis deposes that he had an interview with said Julian, and then narrates a conversation which differs materially from the report of Freeman. It is significant that said Julian is the only person who is designated in the affidavit of Freeman to corroborate his testimony, and that no excuse is offered for the failure to attempt to secure the presence in court of a number of the citizens of Butte, and especially of the two men who seem to have been friendly to the contestants. In *Territory* v. *Manton, supra,* Chief Justice McConnell in the opinion referred to the practice in deciding upon the proof of the grounds in an application for a change of venue, and said : " The court should determine the question from the facts shown, upon a procedure for that special purpose, either by testimony taken by affidavits, or witnesses called and examined in open court, or before the judge at chambers, as the case may be." It would have been the proper mode in this proceeding, when about fifty persons were found who refused to furnish their affidavits, and one party was apparently testifying upon both sides, to have invoked the process of the court and compelled all of them to attend the hearing and give their evidence. There might have been added to this list of witnesses the names of the editors and reporters of the said newspapers who could be questioned as to their source of information, and the citizens who were interviewed April 30, 1890, according to the Butte Mining Journal. But no effort of this nature has been made. John A. Davis is shown to have had no relation to the articles in the said newspapers, and this application rests upon the affidavits of Root and Freeman, who are non-residents of the county of Silver Bow. Upon the entire evidence, and under the practice which has prevailed in the courts of the Territory and State, we must hold that there has been no abuse of judicial discretion in refusing to grant the motion upon the second ground.

It is therefore adjudged that the order of the court below be affirmed.

*Affirmed.*

Harwood, J., and De Witt, J., concur.