SERGIO S. PEÑA, Plaintiff and Appellant, v. JUAN GARCÍA CINTRÓN, Defendant and Appellee.

No. 5956. Argued April 21, 1933.—Decided May 10, 1933.

F. Cervoni Gely for appellant. F. González Fagundo for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

In October 1930, Sergio S. Peña filed a complaint against Juan García Cintrón for damages suffered by the plaintiff, according to the complaint, by reason of challenges, provocations, and pistol shots fired by the defendant. After an answer had been filed and the trial set for July 22, 1931, the plaintiff moved the court to transfer the action to another district or to declare the disqualification of the judge to act, on the following grounds: That the plaintiff had good reasons to believe that he could not obtain a fair and impartial trial; that the judge of said district, Hon. Rafael Arjona Siaca, and the plaintiff, Sergio S. Peña, are personal enemies, their enmity being of an irreconcilable character, and such as would disqualify the judge to act in the instant case. To this motion an affidavit subscribed by the plaintiff was attached, without there being any testimony under oath to impeach the statements of said plaintiff.

The court denied the motion for disqualification or change of venue, and the plaintiff took this appeal, urging that the lower court erred in denying the removal of the case to another district or in not declaring the disqualification of the judge to act.

The plaintiff hopes to attain his purpose, namely, to prevent Hon. Rafael Arjona Siaca from sitting in this case, either through a change of venue or the disqualification of said judge. According to section 23 of the Code of Civil Procedure, a judge cannot act as such in a judicial action or proceeding of any kind to which he is a party, or in which he is directly or indirectly interested; when he is related to either party by consanguinity or affinity within the fourth degree or to the attorney of any of the parties within the second degree; or when he has been attorney or counsel for either party in the action or proceeding pending before his court, or prosecuting attorney in an investigation or criminal proceeding where the facts are the same as in the action submitted for his decision.

Bias or prejudice on the part of the judge against any of the litigants is not included in the aforesaid section. However, the intention clearly appears that the judge should be a person completely disinterested, free of ties and relations that might affect the sober and serene balance of judicial discretion. Section 170 of the California Code of Civil Procedure has a subdivision covering cases of bias or prejudice on the part of the judge. In accordance with said subdivision, which has not been included in our section 23, when it appears from the affidavit or affidavits on file that either party cannot have a fair and impartial trial before any judge of a court about to try the case, by reason of the prejudice or bias of such judge, said judge shall forthwith secure the services of some other judge, of the same or another county, to preside at the trial of said action or proceeding. Such affidavit must be served upon the adverse party or the attorney for such party at least one day before the day set for the trial of the case; provided, counter affidavits may be filed at least one day thereafter, or such further time as the court may direct, not exceeding five days.

Such is the difference existing between section 23 of our code and section 170 of the California Code. The former, prescribes the cases in which a judge cannot act as such, without mentioning the words "bias or prejudice"; the second determines that bias or prejudice renders the judge disqualified to act. In spite of the omission noted in section 23, the parties are not lacking protection against the bias or prejudice of a judge. Section 83 of our Code of Civil Procedure, equivalent to section 397 of the California Code, provides that—

"The court may, on motion, change the place of trial in the following cases:

"* &ast; &ast; &ast; &ast; &ast; &ast;

"2. When there is reason to believe that an impartial trial cannot be had therein.

"* &ast; &ast; &ast; &ast; &ast; &ast;

"4. When from any cause the judge is disqualified from acting."

The defendant argues that the paragraph which authorizes a change of venue when there is reason to believe that an impartial trial cannot be had refers to trials by jury, and has no application in Puerto Rico because civil cases here are not triable by jury. We agree that this provision tends to avoid, in the States of the Union where it is in force, the impanelling of a jury in a community prejudiced against any of the parties, when there is reason to believe that an impartial trial, free of bias and animosity, cannot be secured.

In *Dean* v. *Stone*, 35 Pac. 579, the Supreme Court of Oklahoma held thus:

"The appellant filed a general denial to the complaint, and, before trial, filed his motion and affidavit for a change of venue from the county, alleging, as reasons therefor, that the plaintiffs have an undue influence over the citizens of Oklahoma county, and, second, that an odium attaches to the appellant's defense on account of local prejudice. The trial court overruled the motion for change of venue, and that is complained of as error. Counsel for appellant cite a number of Indiana decisions which announce the doctrine that when an affidavit for a change of venue is filed in a civil case, setting forth the grounds herein specified, it becomes imperative upon the court to order the change, and a failure to do so is fatal error. We have examined these decisions, and they are based upon the theory that the applicant is entitled to a jury trial, and that he has the right to trial by an impartial jury, who would not be influenced by local prejudice or the odium of his defense; but where the cause is to be tried by the court, there is no reason for this rule, and, where the reason ceases, the rule fails. It was never intended that a change should be granted from the judge on account of the local prejudice of the citizens in a community, for these things do not affect or influence courts. It is only the inexperienced juror who will become impregnated with local influences, and perhaps inadvertently permit such causes to operate upon his judgment. This is not the character of a case in which the defendant is guarantied a jury as a matter of right, and the statute, in this case, makes no provision for a jury trial."

Similarly, a case decided by the Supreme Court of Pennsylvania may also be cited; *Edmunds* v. *Duff*, 124 Atl. 489,

where it was held that a statute authorizing a change of venue when a large number of inhabitants of the county have an interest adverse to the applicant and it is shown to the court that a fair and impartial trial cannot be had, was not applicable to cases in equity where the court is the one to hear the testimony and has the duty to pass upon the facts.

In accordance with these decisions, in cases to be tried by a jury, the bias or prejudice of the inhabitants of the district where the action is brought against any of the parties, is a ground for transfer when a fair and impartial trial cannot be had; if the case is to be tried before a judge, the bias or prejudice is not ground for a change of venue. This distinction which is established between judges and juries does not lack its reason. Two remedies are given against the prejudice or bias of a judge: disqualification of the judge or a change of venue; for a general prejudice the only remedy is the transfer of the cause, since the district is always the same and the jurors are selected therefrom. When the community or an important part thereof is possessed of a sentiment of general prejudice, it is not human to expect that all the jurors coming from such an environment would be free from the influences thereof. It is not probable, although it may be possible, that such influences reach the judge also, but in that case the allegation should be individualized and directed against said magistrate, for it would not be proper to include the same within an allegation of general prejudice. Judges are not universally free from prejudices and passions. Human nature has not attained such a degree of perfection as to justify placing an unlimited confidence in it; hence the laws protecting the parties to an action from the bias or prejudice of a judge.

The Insular Legislature, knowing that in Puerto Rico there are no trials by jury in civil cases, enacted the subdivision 2 of section 83 of the Code of Civil Procedure. This provision, generally applied in the States of the Union to

the bias or prejudice of the inhabitants of a district qualified to serve as jurors, must necessarily apply in Puerto Rico to the bias or prejudice of the persons who are to act as judges, because here no trials by jury are held in civil cases. When this provision was incorporated in our code, it was done indeed with the purpose of making it effective in some way. There is no reason to suppose that the lawmaker uselessly enacted a provision which would have practically no application if judges are to be disregarded.

The section which we have been discussing has its counterpart in the codes of California, Idaho, and Montana. Similarly in regard to section 23 as it was originally enacted. The courts of California and Montana have held that in accordance with the legislation then in force, bias or prejudice did not disqualify the judge to act in a given case. In *In re Davis' Estate,* 27 Pac. 342, the Supreme Court of Montana declared that the statute of said State did not specifically authorize the removal of the action by reasons of bias or prejudice on the part of the judge. The same thing happened in California, where in view of the holding of the Supreme Court of said State, the provision which is now a part of section 170 of the Code of Civil Procedure, already cited, was adopted.

Referring to the opinion delivered by the Montana court in the case of *In re Davis' Estate, supra,* the Supreme Court of Idaho, in *Day* v. *Day,* 86 Pac. 532, says:

"The holding of the Montana court that the bias or prejudice of the judge was no ground for a change of venue, moved the Supreme Court of that state in the noted case of *Finlen* v. *Heinze,* 73 Pac. 123; using the following just and strong language: 'No judgment of a court of justice so tainted with corruption as the record leaves this should stand, and its cancellation in this instance will be the evidence of the determination of this court to pursue to the utmost its constitutional and lawful authority, to the end that public confidence in our judicial system may not be lessened and that the fountain of justice may be kept pure.' The framers of our

Constitution guarded with special care our judiciary, and tried to place it above suspicion of unfairness, passion, or prejudice, so that the public confidence in it would not be shaken, and provided that justice should be administered without prejudice. In many of the cases cited the courts have clearly indicated a regret that bias and prejudice of a judge was not made a statutory ground for a change in the place of trial, and disapproved in strong language that a judge swayed by personal bias and prejudice was powerless to injure his foes or render aid to his friend, simply because if he made an error it could be corrected on appeal. *In re Davis Estate,* supra, the court said: 'We disapprove every suggestion and claim that a judge who is swayed by personal bias and prejudice is powerless to injure his foes or render aid to his friends because his errors can be corrected on an appeal to a superior tribunal. There are presumptions in favor of his rulings which cannot be ignored, and he can make orders which cannot be disturbed unless there has been a gross abuse of his discretion.' And quotes in that decision from *Williams* v. *Robinson,* 6 Cush. (Mass.) 333, as follows: 'Conscious bias or prejudice in favor of one of the parties or against the other, caused by hearing an ex parte statement of the facts of the case, is an inability or disability to try the case within the just meaning of the statutes. . . . It was not necessary that the statutes should enumerate all the disqualifications of the standing justice. The rules of the common law and the principles of natural justice are to be applied in the construction of these statutes.'

"In the light of the judicial history of California and Montana in holding that the bias and prejudice of a judge was no ground for a change of venue, it is now recognized by those states that it ought to have been a ground; that it is a matter conducive to a just and proper administration of justice."

In said case of *Day* v. *Day, supra,* decided by the Supreme Court of Idaho, the change of venue was sought on grounds of prejudice and bias of the judge. Section 83 of our code is equivalent to section 4125 of the Code of Civil Procedure of Idaho, and section 23 corresponds to section 3900 of the Revised Statutes of said State (1877). Construing these provisions in connection with a precept of the state Constitution, that court declared:

"Said section 18 of article 1 of the Constitution provides that right and justice shall be administered without sale, denial, delay,

or prejudice. The courts administer justice in this state, and if it appears that the judge has prejudice against either of the parties, it was not supposed that he could administer justice. Under the provisions of said section 4125 of the Code of Civil Procedure, the judge may, on motion, change the place of trial when from any cause he is disqualified from acting, and said provision of the Constitution disqualifies a judge from acting when he is prejudiced in the case. For it cannot be maintained that a judge who is biased or prejudiced in a case on trial before him can administer justice without prejudice. Disregarding said provisions of the Constitution, the ordinary principles of right and justice prohibit or disqualify a judge from trying a case in which he is prejudiced for or against either of the parties to the suit. This provision of the Constitution cannot be brushed aside by saying that it is a mere maxim of the law and means nothing. For the principle therein expressed is one of the foundation stones of our judicial system and jurisprudence, and could not be removed without shattering the entire system.''

In *People* v. *St. Louis Merchants' Bridge Co.*, 118 N. E. 733, 734, the court expressed itself as follows:

''It is now a universally recognized principle of law that no person should sit as judge in his own case or one in which he is materially interested, and that bias or prejudice is ground for disqualifying a judge from hearing a cause. Even in those states in which prejudice does not constitute a ground of disqualification, where the charge is made and the facts alleged indicate the existence of prejudice, the court will carefully scrutinize the record to see that no injustice has been done. 23 Cyc. 583. Statutes of this character are designed to afford every litigant a fair and impartial trial before an unbiased judge. The spirit of our laws demands that every case should be fairly and impartially tried, and no judge should think of presiding at the trial of a case in which his good faith in so doing is open to such serious question as that presented by the record here.''

It is important to bear in mind that subdivision 4 of section 83 authorizes changing the place of trial when from any cause the judge is disqualified from acting. In our judgment, prejudice or bias disqualify the judge from preforming the delicate function of administering justice. The Idaho court strengthened and justified its opinion in *Day* v. *Day,*

*supra,* by construing a constitutional precept according to which justice should be administered without prejudice, and added:

"Disregarding said provisions of the Constitution, the ordinary principles of right and justice prohibit or disqualify a judge from trying a case in which he is prejudiced for or against either of the parties to the suit."

In this jurisdiction, where there is no constitutional provision specifically requiring that justice be administered without prejudice, we maintain that this is a principle so necessary in the administration of justice that it cannot be ignored without impairment to the very justice which the courts must unavoidably protect. Subdivision 2 of section 83 would have no practical value, if it were not applicable to judges. Said subdivision should be construed in connection with subdivision 4, which authorizes changing the place of trial when from any cause the judge is disqualified to act.

Let us now examine the reasons adduced by the plaintiff in support of his application for a change of venue. They are set forth in the motion verified by the plaintiff himself. There was also attached an affidavit taken before the clerk of the District Court of Humacao, which reads as follows:

"That the trial of this case has been set for the 22nd of this month and the affiant has no other witnesses to prove his cause of action than the witnesses who testified in the prosecution for CARRYING A WEAPON brought against Juan García Cintrón, the defendant, such witnesses being the only persons who saw the events that took place on the night of July 25, 1929, which gave rise to the plaintiff's cause of action in this proceeding; and inasmuch as the Judge of this court, Rafael Arjona Siaca, Esq., was the Judge who acquitted Juan García Cintrón, the defendant in the prosecution for CARRYING A WEAPON, it is not to be doubted that the cause of action in this proceeding would totally fail since there are no more witnesses than those who testified in the prosecution against Juan García Cintrón for CARRYING A WEAPON.

". . . that Rafael Arjona Siaca, Esq., Judge of the District Court of Humacao, and the affiant are personal enemies for reasons which are generally known, to wit:

"(a) Affiant personally brought charges against Rafael Arjona Siaca, Esq., before the Department of Justice, in order to prevent that Mr. Arjona should be recommended to the Senate of P. R. for the office of District Judge of Humacao. As the nature of such charges directly affected the personal prestige of Mr. Arjona Siaca, they are the first cause of the personal enmity herein alleged.

"(b) Affiant published and circulated in Humacao a handbill wherein he impeached the personal integrity of Mr. Arjona Siaca; a fact which undoubtedly constitutes also a cause of personal enmity.

"(c) Mr. Arjona Siaca, on the 18th of last June, filed a complaint in the Municipal Court of Humacao against the affiant Sergio S. Peña, praying that the affiant herein be required to enter into an undertaking on the claim that the affiant had that same night threatened to kill him and as a result of said complaint the affiant was found guilty by the Municipal Court and sentenced to six months in jail in default of furnishing an undertaking in the sum of $800.

"On the 19th of last June, affiant was charged before the District Court of Humacao with the offense of carrying a weapon, and Judge Arjona Siaca declared himself disqualified to sit in the proceeding, but in spite of such disqualification he acted to set the case for trial and showed prejudice and animosity against the affiant, for notwithstanding the fact that the charge was of recent origin, Judge Arjona hastily set the case to be tried four days after the arraignment, making of the setting an exceptional case, since there are in the offices of the clerk and of the prosecuting attorney of this court several felony and misdemeanor cases pending trial, without any disposition to try them being shown."

The first reason given by the plaintiff should not be taken into consideration. The fact that Mr. Rafael Arjona Siaca was the judge who acquitted the defendant Juan García Cintrón of the offense of carrying a weapon did not disqualify him to act as judge in the civil action brought by Mr. Peña. As to the other reasons, we think that they should be carefully examined, as they have not been contradicted, in order to determine whether the same are sufficient to justify the change of venue sought. It is alleged that the plaintiff and the judge

are irreconcilable enemies; that the former brought charges against the latter in order to prevent his being confirmed by the Senate; that he further published and put in circulation a handbill impeaching the personal integrity of the judge; and that said judge complained before the Municipal Court of Humacao against Sergio S. Peña seeking that the latter be required to furnish security to keep the peace, on the ground that he had threatened to kill the complainant. The plaintiff confesses his being a personal enemy of the judge and claims that the latter has shown prejudice and animosity against him.

In *Bassford* v. *Earl,* 121 Pac. 396, decided by the Supreme Court of California, the disqualification of the judge was sought in accordance with the last subdivision of section 170 of the California Code of Civil Procedure. Although that case involved the disqualification of the judge and not a change of venue, we refer to it in this opinion because the principle involved is the same: bias or prejudice on the part of the judge. In the case cited the plaintiff alleged that the judge was a candidate for the nomination from a Republican convention for a judicial office, that the plaintiff was a delegate to such convention, that the judge requested his support and the plaintiff and other members of the delegation of the county refused to accede to his request and that by reason of this attitude the judge failed to receive such nomination and thereafter was forced to retire to private practice; that subsequently the judge sought the nomination for judge of the Superior Court of Solano county and again requested his support, which the plaintiff refused, thus contributing to the judge's defeat; lastly he alleged that he could not obtain a fair and impartial trial by reason of the prejudice and bias of said judge against him. Commenting on these facts, which constituted the foundation for a motion to call in another judge, the California court expressed itself as follows:

"But, aside from these considerations, it is plain that plaintiff entertained a spirit of hostility to the judge, the grounds for which, as above set forth, are apparent. It is shown that he was in a position to thwart the judicial aspirations of the judge, refused the judge's request for his support, and did aid in thwarting them, with the result that the judge twice failed of his nomination, and was relegated to private life. There is in all of this sufficient as a prima facie showing to call for a response from the judge, and it cannot be regarded as without significance that no such response was made. For in answer to the application and to the affidavit of plaintiff, the only showing is contained in the affidavit of Mr. Charles S. Wheeler, one of defendants' attorneys, which first averring want of information or belief sufficient to enable the affiant to make any statement touching the conduct of the plaintiff and of the judge in reference to the judicial nominations proceeds as follows: 'That affiant, however, does depose and say, upon his information and belief, that if the facts in relation to said candidacy of said Hon. A. J. Buckles for said offices above named, and to the conversations and requests and acts of the said H. A. Bassford with or towards said judge set forth in said affidavit of said H. A. Bassford did take place, nevertheless the same will in no way operate to the detriment of the said H. A. Bassford nor will the same, nor have the same, operated to bias or prejudice the said Judge A. J. Buckles, nor to disqualify him in any way to pass upon the proceedings in this cause, and that this affiant states, on his information and belief, that the said H. A. Bassford can have a fair and impartial trial of all proceedings in this action before the Honorable A. J. Buckles, and that the said Honorable A. J. Buckles is not disqualified from acting in this cause by reason of prejudice or bias against the said Bassford, or for any other cause whatsoever.' In the nature of things, it is impossible for an affiant occupying the position of Mr. Wheeler to declare that these facts 'will in no way operate to the detriment of Bassford, nor will the same, nor have the same, operated to bias or prejudice the said Judge A. J. Buckles.' If such a statements was necessary in answer to the Bassford affidavit, and not only do we think it was, but from the affidavit of Mr. Wheeler, it seems so to have been regarded by the respondents to that motion, the one person, who, with an informed mind, could make such a declaration, was the judge himself, and he does not do so. It follows, therefore, that upon the showing made it was the duty of the court to have granted appellant's motion, and the order denying that motion is therefore reversed."

In *Morehouse* v. *Morehouse,* 68 Pac. 976, the Supreme Court of California used the following language:

"Another point made on behalf of the appellant is the alleged error of the court in overruling his motion to call in another judge for the trial, and this contention must also, we think, be sustained. The facts alleged in the defendant's affidavit are not denied in the counter affidavits, nor, under the express provision of the statute, can the unverified statements of the judge be considered in determining the question involved. Code Civ. Proc. Sec. 170, subd. 4; *People* v. *Compton,* 123 Cal. 414, 56 Pac. 44. Hence the ruling of the court can be sustained only on the ground of the insufficiency of the defendant's affidavit, and this, we think, was not insufficient. It is alleged in the affidavit that 'prior to the commencement of this action the affiant and the said Oval Pirkey, nor judge,' etc., 'had a personal quarrel, dispute, and controversy, in which much personal spirit and ill feeling entered, and it became and was an angry quarrel on both sides, and this affiant and the said Oval Pirkey parted in a very unfriendly manner and mood, and that unfriendly feeling still exists on the part of the said Oval Pirkey toward and against this defendant; and affiant verily believes, and states the facts to be, that by reason of the feeling thus engendered the said judge is biased and prejudiced against this defendant and his case to such an extent that this defendant cannot have a fair and impartial trial before said judge.' It may be admitted, as urged by the respondent's counsel, that from the mere fact of the quarrel alleged it cannot be conclusively, or even probably, inferred that the judge could not fairly try the defendant's case; and we are glad to believe that with most judges the inference would be incorrect. But here there is a direct allegation of the fact of prejudice and bias on the part of the judge; and, though the allegation is based—as in most cases it must be based—merely on the belief of the affiant, yet it is accompanied by a statement of the facts on which the belief is based, as complete as the nature of the case admitted of; and this was all that could reasonably be required. The court should therefore have granted the motion."

The plaintiff does not conceal his animosity against the judge. Mr. Arjona Siaca himself sought that Mr. Peña be required to furnish security to keep the peace for having

threatened to kill him. In these circumstances, it does not seem reasonable that Mr. Arjona Siaca should act as judge in this case, even though he is, as we suppose, disposed to act fairly and impartially. Mr. Arjona reveals his attitude in the following words which we copy from his order denying the motion for a change of venue:

"And the undersigned judge adds: the exercise which he may personally make of his civil rights as a citizen shall in no way interfere with his official functions. Regardless of all the painful alternatives he may have to face in his private life, he shall never suffer a single atom of prejudice to disturb the justice of his decisions. In the balance of his life, no attack to which he may be subjected can outweigh the absolute and full forgiveness which he holds in his breast for all wickedness and all rashness. Nor can it dim the concept he has of his exceptional responsibility in the important task of administering justice."

Such noble and inspired words exalt and do honor to the officer who subscribes them. In his conscience he feels capable of being just even to his own enemies. Nevertheless, even though his conscience remains unmoved and serene in spite of the facts related by the plaintiff, if such facts are sufficient to show *prima facie* the propriety and convenience of a change of venue, the case should be transferred. The defendant argues that the only thing appearing from the plaintiff's motion is that Mr. Peña is an enemy of the judge of the district court, but not that the judge is his enemy, which is the thing required by the Code of Civil Procedure. In his motion and the accompanying affidavit Sergio S. Peña declares under oath that a personal enmity of an irreconcilable nature exists between him and the judge and that said judge has shown prejudice and animosity against him, and he states the facts which in his judgment show such prejudice and animosity. No testimony under oath denying those statements appears from the record. A reading of the sworn allegations of the plaintiff is sufficient to conclude that Judge

Arjona Siaca should not act in this cause and that a change of venue should be ordered.

The order appealed from must be reversed and the case remanded to the court below for further proceedings not inconsistent with this opinion.

Mr. Justice Wolf, concurring.

While in this case I have not been without doubts, I have finally agreed with the majority that the order appealed from should be reversed. I differ but slightly from the reasoning of the majority opinion, but my idea is, and the cited jurisprudence tends to show, that in a case where under the circumstances prejudice in the trier might be expected to arise, a change of venue should be ordered, whether the trier is a judge or a jury. When a motion for such a change of venue is presented the judge may ask himself whether the bar or the public might not think, as expressed by section 83 of the Code of Civil Procedure, that there was "reason to believe that an impartial trial can not be had." The judge himself might be sure, as was Judge Arjona Siaca, that no bias would arise in him and yet the consequence from the fact might be different for an ordinary judge. In other words, when there are grave reasons to have some genuine suspicion that an impartial trial might not ensue, the question for the judge is not his personal attitude but the whole situation. It becomes an abstract question. Under the circumstances, as set forth in the opinion of the majority, something might happen at the trial to arouse hostility even in the most disinterested judge. Hence, as already intimated, according to the code there was reason to believe that an impartial trial might not be had.

One might even suggest that if a judge leaned backwards to decide in favor of a man who had declared himself an enemy, an impartial trial would not have arisen.